BELCHER SUGAR REFINING COMPANY, Appellant, v. ST. LOUIS GRAIN ELEVATOR COMPANY, Respondent.

June 7, 1881.

1. A condemnation of private property for "a highway for wharf purposes," is a condemnation for a wharf simply.

2. The erection, upon a wharf, of a warehouse to be used in connection with a grain elevator is not necessarily inconsistent with the original purpose of the condemnation for wharf purposes.

3. Where a city, having condemned property for use as a wharf, leases, under legislative authority, a portion thereof, for the erection of an elevator warehouse, that the revenue from the wharf so leased may be appropriated, for a limited time, to the lessee, is not conclusive that the wharf is appropriated for private purposes.

4. A wharf which has been "rip-rapped," but which is covered several feet deep with a mud deposit and is unfit for use as a roadway, is not paved, within the meaning of a charter provision authorizing the leasing of a portion of an unpaved wharf.

5. That it is *ultra vires* of the lessee to take a lease of the quantity of land here leased, is no ground of injunction to prevent its use under the lease, at the suit of the owner of the fee in the land condemned.

APPEAL from the St. Louis Circuit Court, LINDLEY, J. *Affirmed.*

SMITH P. GALT, for the appellant: The premises in dispute in this case were not an "unpaved" portion of the wharf, and therefore could not be leased by the city to the defendant. — Cooley's Const. Lim. 57; Smith on Stat. &

Const. Constr., sects. 478, 481; *King* v. *Inhabitants*, 10 Barn. & Cress. 520; *Walker* v. *Harris*, 20 Wend. 555; *Martin* v. *Hunter's Lessee*, 1 Wheat. 326; *Cannon* v. *New Orleans*, 20 Wall. 577; *Packet Co.* v. *St. Louis*, Reporter (June 23, 1880), 803; *Schultz* v. *Railroad Co.*, 36 Mo. 13. Whether the premises in dispute were a paved or unpaved portion of the wharf, the lease of the city to the defendant and the defendant's proposed occupation of the premises are illegal: *First*, because it is a diversion of the use in the property condemned, and a violation of the trust assumed by the city; *secondly*, it is placing an additional burden upon the property, the fee thereof being in the plaintiff, not contemplated in the condemnation proceedings; *thirdly*, it being an additional burden, if the proposed warehouse is considered for public use, it is taking and damaging the plaintiff's property without compensation, contrary to the common law and section 21, Artcle II.', of the Constitution of Missouri; if considered for private use, it is in violation of section 20, Article II., of the Constitution of Missouri; *fourthly*, it is a violation of the city's implied contract made with the plaintiff, when it paid to the city the $2,350, as benefits to its property, that the city would hold the property strictly in accordance with the purposes expressed, and by which the company would be benefited, and that they would not be changed, so that those benefits would be destroyed; *fifthly*, the defendant's erection is for private use, and is a nuisance; *sixthly*, on all these questions the plaintiff, by reason of being adjoining and adjacent to this portion of the wharf, as well as the owner in fee of the premises, may invoke the power of a court of equity, and there obtain protection by injunction from the threatened wrong. — Cooley's Const. Lim. 53, 57, 394, 524, 529, 557; *Currier* v. *Railroad Co.*, 11 Ohio (N. s.), 231; *Miami Coal Co.* v. *Wighton*, 19 Ohio (N. s.), 560; *Allen* v. *Jones*, 47 Ind. 442; *Dyckman* v. *Mayor*, 5 N. Y. 439; *Water-Works Co.* v. *Burkhardt*, 41 Ind. 364; *Gilbert* v. *Turn-*

pike Co., 3 Johns. Cas. 107 ; Railroad Co. v. Campbell, 62 Mo. 588 ; Cunningham v. Railroad Co., 61 Mo. 33 ; Ellis v. Railroad Co, 51 Mo. 203 ; Railroad Co. v. Canal Commissioners, 21 Pa. St. 22 ; The Commonwealth v. Railroad Co., 24 Pa. St. 159 ; Chenango Bridge Co. v. Binghampton Co., 27 N. Y. 93 ; Bradley v. Railroad Co., 21 Conn. 306 ; Baltimore v. Railroad Co., 21 Md. 50 ; Illinois R. Co. v. St. Louis, 2 Dill. 70 ; Leslie v. City of St. Louis, 47 Mo. 477 ; The State v. Noyes, 47 Me. 207 ; Hannibal v. Railroad Co., 49 Mo. 481 ; Allen v. Jones, 48 Ind. 442 ; Barclay v. Howell's Lessee, 6 Pet. 31 ; The State v. Laverack, 34 N. J. L. 202 ; The Commonwealth v. Rushe, 14 Pa. St. 186 ; Warren v. Lyons, 22 Iowa, 357 ; Board of Education v. Edson ; 18 Ohio St. 225 ; Newell v. The People, 7 N. Y. 97. The defendant is limited in its charter to the five hundred feet frontage on the river. As it has already acquired, and now occupies the five hundred feet, it cannot occupy the premises in question, which would make its river frontage eight hundred feet. — Defendant's Charter, sect. 3 ; Beaty v. Lessee of Knowler, 4 Pet. 29 ; Agar v. Canal Co., Cooper's Cas. 79.

BROADHEAD, SLAYBACK & HAEUSSLER, for the respondent : The Legislature having empowered the city to make this lease, thereby determined what use of this condemned property was most beneficial to the public. — Cooley's Const. Lim. (2d ed.) 521, 553 ; Muse v. Railroad Co., 21 Ill. 522 ; West v. Bancroft, 32 Vt. 367 ; Kelsy v. King, 32 Barb. 410 ; Ohio R. Co. v. Applegate, 8 Dana, 289. The erection, under the sanction of the city, of an elevator to be used for handling grain at the wharf, and at all time under the direction and control of the city authorities, is such a use of the wharf property as does not fall without the scope of the dedication, and such a structure would not, therefore, be a public nuisance. — Illinois R. Co. v. Elevator Co., 2 Dill. 70 ; Hinchman v. Railroad Co., 2 C. E. Green, 75. "What the law authorizes cannot

be a nuisance, such as to give a common-law right of action." — *Transportation Co.* v. *Chicago*, 99 U. S. 635. Whatever right the State may have to prevent the erection of an elevator or other structure erected on the wharf without legal authority, it is only in virtue of special and individual injuries, that private persons can ask for equitable relief. — *Railroad Co.* v. *Ward*, 2 Black, 485 ; *Wheeling Bridge Case*, 13 How. 518 ; *Higbee* v. *Railroad Co.*, 4 C. E. Green, 276. The power of the public over highways is not confined to the sole purpose of travel. — *Moses* v. *Railroad Co.*, 21 Ill. 522 ; *West* v. *Bancroft*, 32 Vt. 370. When private property is devoted to public use it is subject to public regulation. — *Munn* v. *Illinois*, 94 U. S. 130.

BAKEWELL, J., delivered the opinion of the court.

This is an application for an injunction to restrain defendant from erecting a warehouse on the bank of the Mississippi River at St. Louis. On hearing, the Circuit Court dismissed the bill. It appears that in August, 1864, the city of St. Louis, by ordinance, established, and authorized the land commissioner to commence proceedings to cause to be opened according to law, what the ordinance speaks of as " a public highway for wharf purposes," from the south side of Biddle Street to the northern limits of the city. The condemnation proceedings were concluded in 1867. Benefits to the amount of $2,350 were assessed against plaintiff, and the city paid to plaintiff $21,643, being the sum less benefits and costs, assessed for the taking and condemnation of plaintiff's property in making the wharf ; and plaintiff gave to the city a receipt for this money, in which the following language is used : " The sum hereby receipted for being in full for the value assessed in said proceedings for the premises aforesaid ; and the said Belcher Sugar Refining Company covenants to and with the city of St. Louis that said company shall and will, in case of failure of title

to all or any part thereof [that is, to the property described in the receipt as taken from plaintiff for the wharf], pay and refund to the said city the sum aforesaid, or such parts thereof as shall be in proportion to such failure of title." · This instrument is under seal of the company.

Plaintiff is engaged in refining sugar. The wharf, as established, was about two hundred and twenty feet wide; its western line being eighty feet east of Lewis Street, which bounds city blocks 226 and 225 on the west. Plaintiff owned almost all of block 225 and thirty feet of block 226, these blocks extending to the river. After the condemnation, and before the lease which will be spoken of, plaintiff acquired almost all of block 226; its deed as to part calling for the river as the boundary. It also owns several blocks west of these two blocks, on which are the extensive buildings used for its business. Plaintiff receives annually seventy-five thousand tons of sugar, which is unloaded on the wharf at a point about a mile south of the property in question and hauled to the refinery on drays.

In 1871, the city graded the wharf in front of these two blocks; and in 1872, three hundred and fifty feet of this wharf was rip-rapped by the city, at a cost of $3,200. This rip-rapping was originally intended as an approach to the river, but next year's high water took all the macadam off the rip-rap; and, as the dyke on the opposite bank caused very deep water and a swift current, just at this point, the city allowed the scavenger dump to be established there. There had to be a wagon-road made to this scavenger dump, because the rip-rapping was covered four feet deep with mud and deposits. This made the bank so steep as to be difficult to climb. There was evidence tending to show that the river front at this place had not been fit for use as a wharf for some years before the lease by the city to defendant.

The City Charter in force at the date of defendant's lease

authorizes the city of St. Louis (Art. III., sect. 26, sub-divisions 2 and 4; Rev. Stats. 1585) to establish, open, vacate, alter, widen, extend, pave, and otherwise improve, all wharves; to erect docks and wharves; and', "to set aside or lease portions of the unpaved wharf for special purposes, such as the erection of sheds, elevators, and ware-houses,   *   *   *   and for any purpose tending to facilitate the trade of the city; but no permit to use any portion of the wharf, or any lease of the same shall be granted for a term exceeding fifty years."

On August 18, 1879, the city of St. Louis leased to defendant, for twenty years, at the rent of $300 a year, a piece of ground three hundred and nineteen feet along the river by ninety feet deep, being the whole wharf in front of block 226, from the railroad tracks to the river, for the purposes of a warehouse for the storing and handling of grain, in connection with the uses of its elevator, with authority to lay connecting railroad tracks, and to construct and use elevators and derricks. Under this lease defendant entered and began to prepare the ground for the purposes for which it was leased.

The charter of defendant authorizes it to acquire, by pur-chase or otherwise, any real estate in St. Louis fronting on the Mississippi, not exceeding five hundred feet front in any one locality, the real estate thus obtained not to be subject to condemnation, so long as it is used for grain ele-vators and uses connected therewith; and it may erect one or more grain elevators on the public wharves of the city, with the consent of the authorities. It must construct so as to accommodate the river interests, and give all facilities for storing grain, and so as not to obstruct navigation. No provision in the charter to be construed to interfere with the city's right to collect wharfage.

Defendant contends that, by virtue of the language used in the receipt given by plaintiff to the city, and by the terms of the act of February 20, 1865, for perfecting the

title to real estate held by the city of St. Louis for public use, the fee of this wharf was in the city of St. Louis at the time of the lease. We think not. But as we do not pass judicially upon these questions, because it is not necessary for us to do so for the purposes of this opinion, we pretermit all discussion of them and assume that plaintiff rightfully contends that nothing has occurred to divest plaintiff of the fee in the land condemned, and that the city has merely acquired an easement for a public wharf, and has no power to enter upon and appropriate this land for purposes other than those for which it was originally condemned, or to authorize others to do so.

The property was condemned as "a public highway for wharf purposes." We think that this means no more and no less than a condemnation for wharf purposes. A wharf is, in a certain sense, a way. A highway is simply a public way; and a highway for wharf purposes is simply a public wharf. The language of the ordinance cannot be fairly construed to mean that a way along the river bank so constructed that foot-passengers and carriages can pass along it in the direction of the stream through its entire extent, must be established and kept up. The word "highway" is limited by the word "wharf;" and the character of a wharf changes as the needs of commerce and the modes of doing business change. A grain elevator may be a wharf of several stages, and the business of a city may be of such a character that its wharves must be so constructed that there shall be no connected roadway along the water front.

The uses to which property dedicated or acquired for a public wharf may be put, are elaborately discussed by Judge Dillon in *Illinois and St. Louis Railroad Company* v. *Elevator Company*, 2 Dill. 70. It would serve no good purpose to go over this ground again in this opinion.

The lessee in this case is to use this portion of the wharf for the erection of a warehouse for the storing or handling of grain, in connection with the uses of its elevator, and

may use machinery to facilitate the loading and unloading of boats, and the handling of grain, such improvements to be under the supervision of the harbor master and wharf commissioner. If this use is inconsistent with the original purposes of condemnation, these erections will be clearly a nuisance, and plaintiff is entitled to relief. But, if this use is a new use of the property only because the mode of doing business has necessitated a wharf different in kind from that used when the condemnation was effected, it would be going very far to declare judicially that a use of a part of the river front for grain elevators and buildings erected as necessary or convenient appendages thereto, was not a use for purposes of a public wharf, and that the erection of such buildings is the imposing of a new burthen upon the property inconsistent with its dedication for a wharf.

In this case, however, the city makes a lease for twenty years to a grain elevator corporation. But it does this under plain legislative authority to lease, for any period less than fifty years, any unpaved portion of its public wharf for the purpose of sheds, elevators, and warehouses. And the lease is made to a corporation bound by its charter to so construct as to accommodate the river interests, and to give all facilities of storing grain. The object of the Legislature seems to be clearly indicated by the corresponding provisions of the two charters, of defendant and of the city. The manifest intention of the Legislature in these provisions is to further the public interests by accommodating the wharf to the growing trade of the city, and to enable the municipality, by artificial appliances, to adapt the wharf to the increasing necessities of commerce, by the introduction of modern improvements in the mode of transshipping and storing produce.. It may very well be that, for the purposes of trade, it may become a matter of public necessity that the river front of a large city should be subdivided, its capacity for accommodating trade artificially increased, that

warehouses and elevators should be built upon it, and that certain parts of the wharf should, in the interests of the general public, be assigned to companies running certain lines of boats, as to companies operating certain improved systems of economizing space and time by the means of machinery. It is for the Legislature to determine whether such and such modes of using the public wharf operate beneficially or injuriously to the public right of way in the wharf. It is clearly within the power of the municipal authorities, under the general powers in the charter, to establish regulations limiting the right of individuals to the use of a public wharf, and we think it is clearly within the power of the Legislature to give to the municipal authorities a right to lease for wharf purposes, portions of the public wharf. The Legislature, by granting this power to lease, determines that such a use of the public wharf is the most beneficial to the public ; and we do not see that the courts can interfere. That the Legislature cannot authorize the appropriation of property dedicated as a public wharf for purposes inconsistent with the dedication, is conceded. But a new use is, not only not necessarily inconsistent with the original purpose, but may be the only possible way of carrying that purpose out. The public welfare must be presumed to have been the object of the Legislature in authorizing leases of portions of the wharf ; and the privileges granted to the lessee are to be regarded as means of effecting a public end, and of affording to the general public the most beneficial use of the public wharf, as a wharf. The wharf, as a wharf, belongs to the city ; and, if, for the convenience of commerce, the Legislature authorizes the leasing of portions of it to elevator companies for wharf purposes, it is not for the courts to say that such a use of the wharf is an enclosure for private use of what belongs to the public. The mere fact that the revenue from wharves so rented may be appropriated, for a limited time, to the elevator companies which erect the improvements, is not conclusive that

these wharves are to be considered as appropriated to a private, and not to a public purpose. It may well be that only through the capital and enterprise of corporations, organized for that purpose, modern appliances can be applied to public wharves so as to give them the proper capacity for effectuating the ends for which they were condemned or dedicated as public wharves; and, as it has been held that a public highway is none the less a public highway because the lord of the fee was entitled to the profits arising from its use as an established road (4 East, 21 ; 8 Dana, 296), so it may be that a wharf may be, in a true sense, a public wharf, though leased to a private corporation for the purpose of fitting it, by elevators and other machinery, for the necessities of the grain trade.

It is contended that the portion of the wharf here leased was a paved, and not an unpaved, portion of the wharf. We think that the weight of the evidence is, that this portion of the wharf was not paved within the meaning of the language of the charter. In one sense it was paved. A hard, artificial surface had been put upon the steep-sloping bank, mainly for its protection ; and before this surface was covered by a deposit of mud it was possible to haul loads across it. But the work was what is called, technically, "rip-rapping," as distinguished from paving; and it is the sort of work that is done to protect a bank from washing, rather than to make a carriage-way. Thin slabs of stone were set, side by side, edgeways, over the surface. There was no paving with stones presenting a broad surface, or with a material which would be expected in time to present a surface proper for the use of pedestrians or of wheeled carriages. Mr. Belcher testified that it would have been possible to haul their sugar along this wharf, but that it was never done, owing to the steepness of the grade. And he says it was not paved with ordinary paving rock, and that, for several years before the lease, it was a bluff bank, and could not be used as a wharf.

Plaintiff insists that defendant, by its charter, is limited to five hundred feet front on the river, which it already had before this lease. We need not examine into this. The State may complain, if defendant is violating its charter. But this cannot concern plaintiff, unless he is specially damaged by this. The fact that defendant is prohibited by its charter from leasing more than five hundred feet of ground, and that this lease gives it eight hundred feet, if that be a fact, furnishes no ground for the interposition of equity for plaintiff's relief, if the city has the right to lease the property. The fact that it may be *ultra vires* of the defendant to erect an elevator warehouse at this place, will not make the warehouse a nuisance when erected, and cannot affect the question as to whether the erection of an elevator is an abandonment of the use of the property for a public wharf.

We think the judgment should be affirmed. It is so ordered. All the judges concur.