EDWARD J. GAY, Respondent, v. MUTUAL UNION TELEGRAPH COMPANY, Appellant.

### June 27, 1882.

1. Under the statutes of the state and the charter and ordinances of the city of St. Louis, the erection of telegraph poles at the corner of Second and Pine Streets in the said city was not unlawful.

2. The commencement of the work without having first obtained authority from the board of public improvements is not ground for an injunction if such authority was subsequently given.

3. An appellate court cannot revise the discretion given the board of public improvements unless such discretion is so exercised as to be clearly subversive of private rights.

4. The erection of a telegraph pole so as to incommode the public gives an individual no right of action to abate the nuisance unless he has sustained special damage.

5. Inconvenience to the public from the erection of a telegraph pole cannot be reasonably avoided, and furnishes no ground for an injunction.

6. The inconvenience and injury to the individual must be such as would constitute a nuisance if it were not for a public use.

APPEAL from the St. Louis Circuit Court, HORNER, J. *Reversed and remanded, with directions.*

MCKEIGHAN & JONES, for the appellant: Telegraph poles erected on the streets by legislative and municipal authority are not nuisances. — 2 Dill. on Mun. Corp., sect. 698; *Lackland* v. *Railroad Co.*, 31 Mo. 180; *Porter* v. *Railroad Co.*, 33 Mo. 128; *Atlantic, etc., R. Co.* v. *St. Louis*, 66 Mo. 228; *Randle* v. *Railroad Co.*, 65 Mo. 325.

F. J. Bowman, for the respondent.

Thompson, J., delivered the opinion of the court.

The circuit court enjoined the defendant, a telegraph company, from erecting two telegraph poles in the outer edge of the sidewalk on the south side of Pine Street in the city of St. Louis, abutting the plaintiff's property. The grounds on which the injunction was asked were, that the attempted erections were unlawful, and that they would constitute a nuisance inflicting special damage on the plaintiff.

The facts which we take to be established by this record are, that the plaintiff is the owner of a high building, fronting eastward on Second Street, and extending westward along Pine Street a considerable distance, to an alley. Pine Street, like all the streets in what is called the old town, is narrow, and the sidewalk in which the defendant attempted to plant these poles is but six feet wide. The poles themselves are sixty-five feet in length, and are inserted into the ground seven feet, so that they are fifty-eight feet high above the surface of the street. They are from twenty to twenty-four inches in diameter at the surface of the ground, and, when planted in the sidewalk as the defendant proposes to plant them, they will obstruct about two feet of the passage-way, leaving about four feet for passage.

There was some evidence tending to show that one of the poles, if planted as the defendant was proceeding to do, would endanger an area wall, which prevented the water in a sewer from getting into the cellar of the defendant's building. But the petition does not ask that the injunction be granted on the ground that the work was being negligently done, but on the ground that the erections were unlawful and a nuisance *per se*. No objection was made, however, for variance; and we are, perhaps, entitled to consider the case as the parties have made it by their evi-

dence, and not merely as it stands upon the issues made by their pleadings. But so considering it, we are of opinion that the evidence, which tends to show that the poles are a source of danger to the plaintiff's building, has been successfully rebutted. We are clear that the evidence does not make it appear sufficiently probable that the plaintiff is threatened with such injury as will warrant us in sustaining the decree granting an injunction on this ground. The fears expressed by the plaintiff's witnesses, that the vibrations of the pole may cause the area wall to crack, thus letting water from the sewer into the plaintiff's cellar, and that, by reason of its great height, it may be blown down in some unprecedented storm, are mere conjectures of problematical and contingent damage, which, we are satisfied from the evidence, is not likely to arise, but which, should it arise, and under such circumstances as would impute it to the negligence of the defendant, would afford ground for redress in an action at law for damages. 1 Thomp. on Neg. 568, and cases cited.

Confining ourselves, then, to the real questions, and the only ones which have been much discussed, we shall inquire : 1. Whether the erection of these poles was unlawful. 2. Whether they were a nuisance obstructing the highway and causing special damage to the plaintiff.

1. It is clear that the erections are not unlawful. The Revised Statutes contain the following provisions : " Companies organized under the provisions of this article, for the purpose of constructing and maintaining telephone or magnetic telegraph lines, are authorized to set their poles, piers, abutments, wires, and other fixtures along and across any of the public roads, streets, and waters of this state, in such manner as not to incommode the public in the use of such roads, streets, and waters. Rev. Stats., sect. 879.

" Such companies are also authorized to enter upon any land, whether owned by private persons in fee or in any less estate, or by any corporation, whether acquired by

purchase or by virtue of any provision in the charter of such corporation, for the purpose of making preliminary surveys and examinations with a view to the erection of any telephone or telegraph lines, and, from time to time, to appropriate so much of said lands as may be necessary to erect such poles, piers, abutments, wires, and other necessary fixtures for a telephone or magnetic telegraph," etc. *Ibid.*, sect. 880.

" No telephone or telegraph company shall, by virtue of this article, be authorized to enter or appropriate any dwelling, barn, store, warehouse, or similar building erected for any agricultural, commercial, or manufacturing purposes, or to erect poles so near thereto as materially to inconvenience the owner in their use, or to occasion injury thereto." *Ibid.*, sect. 898.

The mayor and assembly of the city of St. Louis, by its charter, have power, by ordinance not inconsistent with the constitution or any law of this state, or of the city charter, " * * * to construct and keep in repair all bridges, streets, sewers, and drains, and to regulate the use thereof; * * * to license and tax * * * telegraph companies or corporations; * * * and finally, to pass all such ordinances, not inconsistent with the provisions of this charter or the laws of the state, as may be expedient in maintaining the peace, good government, health, and welfare of the city, its trade, commerce, and manufactures," etc. Rev. Stats., pp. 1587, 1588. The charter provides for the creation of a board of public improvements (*Ibid.*, p. 1590), and, after specifying some of its duties, provides that " the municipal assembly shall provide, by ordinance, such additional duties of, and requirements from the board of public improvements, and its several members, as it may deem necessary." *Ibid.*, p. 1597.

Acting under the powers thus granted, the municipal assembly of St. Louis, on the 25th of February, 1881, passed "an ordinance to regulate the erection of telegraph and

telephone poles." Its provisions, so far as material to the present controversy, are as follows : —

" SECTION 1. Any telegraph or telephone company duly incorporated according to law, doing business or desiring to do business in the city of St. Louis, is hereby authorized to set its poles, piers, abutments, wires, and other fixtures along and across any of the public roads, streets, and alleys of the city, subject to the regulations hereinafter provided.

" SECT. 2. Whenever, in the judgment of the board of public improvements, the use of any alley for such purpose is practicable, the poles of such companies shall be placed upon and along said alley, instead of upon and along the street next adjoining and parallel thereto. Where the poles are set in any alley, they shall be located as near the side line of the alley as practicable, and in such manner as not to incommode the public or adjoining proprietors or residents.

" SECT. 3. The poles used as herein provided shall be of sound timber, not less than five inches in diameter at the upper end, straight, shapely, and of uniform size, neatly planed or shaved, and thoroughly painted with two coats of lead and oil paint of such colors as may be directed by the board of public improvements, and be supplied with iron steps commencing twelve feet from the surface of the ground and reaching to the arms supporting the wires ; said wires shall be run at a height not less than twenty-five feet above the grade of the street. Whenever the poles are erected on a street, they shall be placed, in all cases, when practicable, on the outer edge of the sidewalk just inside the curbstone, and on the line dividing the lots one from the other, and in no case to be so placed as to obstruct the drainage of the streets, or to interfere with or damage in any way the curbstones, trees, or other public or private property on the line of the street or alley where such poles shall be erected.

" SECT. 4. Before any telegraph or telephone company shall erect any poles upon any street or alley, they shall

submit for approval to the board of public improvements the route of their proposed line or lines, stating the name of the street or streets to be occupied, or, if an alley, the number of the block, and, as far as practicable, the location of each pole. All work of excavating, refitting, and restoring the pavement shall be done under the supervision and direction of the street commissioner, and to his entire satisfaction, and in all cases the pavement shall be restored as speedily as possible, and to the same condition it was before.''

The defendants began the erection of the poles in question without having first obtained authority for that purpose from the board of public improvements, but, on discovering that their operations were opposed, they afterwards obtained such authority. We do not think that they could be rightfully enjoined from proceeding with the erection of the poles on the ground that they had at first attempted to erect them without authority, though their conduct in so doing was illegal and censurable ; and we do not understand that the learned judge awarded the injunction upon that ground.

In view of the foregoing statute, charter, and ordinance, it seems impossible to say that the erection of these poles, if proceeded with, would be unlawful. It is true that, by the statute above quoted from, they must be erected in such manner '' as not to *incommode the public* in the use of such roads, streets,'' etc. But, on well-settled principles, although they may be erected so as to incommode the public, the nuisance cannot be abated in a private suit, except in so far as the plaintiff is specially damaged thereby. This the respondents' counsel impliedly concedes. Besides, it is obvious that the statute contemplates that the inconvenience to the public must be such as cannot be reasonably avoided. Telegraph poles cannot be erected anywhere in a city without, in some slight manner, incommoding the public ; and if the statute were to be so construed as to prohibit the

erection of the poles whenever slight inconvenience to the public would ensue, this would amount to a prohibition against their erection in cities — a thing which would be absurd, which would make the statute in a large measure nugatory, and would make it contradict itself.

Coming down to the ordinance, we do not see that it has not been substantially complied with in this case. The poles are to be erected along alleys instead of streets when the use of alleys is practicable. But who is to judge of the practicability of using alleys instead of streets? The ordinance says, the board of public improvements. That discretion has been committed to them, and we have no power to revise it, unless possibly in case of manifest abuse. *The Commonwealth* v. *Boston*, 97 Mass. 555; *Young* v. *Yarmouth*, 9 Gray, 386. The courts of the state have neither the jurisdiction to revise such a discretion, nor any appropriate means of exercising this jurisdiction if it possessed it. It has been committed, by the charter and ordinance above quoted from, finally and conclusively, to the board of public improvements; and if the courts could, on the complaint of any single property-owner in the vicinity of whose property a telegraph pole had been placed, order it taken up so that it would have to be placed against the property of some other owner, great confusion would result. The courts cannot interfere with municipal regulations of this kind, until the point is reached where they become substantially subversive of private rights. The fifth section of the ordinance quoted from, reserves the right to the board of public improvements at any time to direct alterations in the location of telegraph poles and in the height at which telegraph wires shall be run. In view of this provision, the courts, even if they had power to interfere, would not exercise such power, unless it were shown that the aggrieved property-owner had appealed to the board of public improvements without redress; and that has not been shown in this case.

No abuse of this discretion is shown in the present case. It is not shown here that it would be practicable to carry this company's wires along any alley, so as to get them to the company's office in the business centre of the city. Then, as to the size of the poles, there is no prohibition in this ordinance against the poles which the defendant proposes to use. The ordinance gives their minimum, but does not undertake to give their maximum, dimensions. They are to be placed, where practicable, on the outer edge of the sidewalk, just inside the curbstone, as was done in this case, and on the line dividing the lots one from another, which provision was sufficiently complied with here, by placing one of them on the corner of a street, and the other on the corner of an alley. And they are "in no case to be so placed as to interfere with or damage in any way the curbstones, trees, or other public or private property on the line of the street or alley where such poles shall be erected." We need not consider whether they are so placed in this case as to work damage to any public property, because the public is not here suing.

Nor do we see that, within the meaning of section 898 of the Revised Statutes already quoted, the defendants were attempting to erect these poles so near the property of the plaintiff as materially to inconvenience him in its use, or to occasion injury thereto. Some inconvenience may possibly flow from it; but the statute obviously does not mean to prohibit the erection of telegraph poles, unless the inconvenience to the property-owner is of such a material character as would constitute a nuisance in case the erection were for a private instead of a public use. There are many things which work much more serious hurt to adjacent property than this, — many callings which cannot be carried on in cities without more or less inconvenience and detriment to others; and yet they cannot be enjoined as nuisances, because their existence is necessary to trade, and they furnish the ordinary means by which people gain their

livelihood. An iron foundry, a livery stable, or a match factory, erected in the immediate vicinity of this plaintiff's property, would cause far greater damage thereto than the erection of these two poles in the sidewalk, and yet we apprehend that the erection of such establishments would not be enjoined by the courts.

2. This brings us directly to the second question upon which the plaintiff's claim for relief is founded, namely, that he has suffered special damage from this obstruction of the highway. It is claimed that the poles are a partial obstruction of the sidewalk; that the plaintiff, by reason of the fact that his building is in the immediate vicinity of the obstruction, sustains a damage thereby not common to the rest of the public. Cases of special damages growing out of an unlawful obstruction of the highway will generally be found to be cases where, by reason of the peculiar situation of the plaintiff, the obstruction cuts off his access to and egress from his premises or place of business (*Greasly* v. *Codding*, 2 Bing. 226; *Iveson* v. *Moore*, 1 Ld. Raym. 486; *s. c.* Willes, 74, note *a*), or renders it more tedious (*Blagrave* v. *Bristol Waterworks Co.*, 1 Hurl. & N. 367; *s. c.* 26 L. J. (Exch.) 57; *Wiggins* v. *Coddington*, 2 Car. & P. 554), or more circuitous (*Hart* v. *Bassett*, Sir T. Jones, 156; *Rose* v. *Miles*, 4 Mau. & Sel. 101), and hence more expensive. We are also disposed to concede that an obstruction of such a nature as to turn the tide of travel away from the door of a building, so much as to injure the plaintiff's trade, if a tenant, or his rents, if a landlord, would be such an obstruction of the highway as, if otherwise unlawful, would be enjoined in a court of equity. But that is not the case here. These telegraph poles do not in any way obstruct the passage of vehicles; and, though they may in some small degree incommode foot travel, it is not a reasonable conclusion from the evidence that they so much obstruct it as to cause any peculiar damage to this plaintiff.

We shall not go into the question of the power of the legislature to authorize the use of public highways for the purpose of erecting telegraph poles, because that power is conceded by the learned counsel for the plaintiff in this case. We have no doubt that such a power exists.

The judgment is reversed and the suit dismissed. All the judges concur.

Supplemental Opinion, June 29, 1882. — Upon further consideration, we reverse the judgment and remand the cause, with directions to the circuit court to dismiss the bill without prejudice to the right of the defendant to move for an assessment of damage for the wrongful suing out of the injunction. All the judges concur.