JULIA BUILDING ASSOCIATION, Appellant, *v.* BELL TELEPHONE COMPANY ET AL., Respondents.

### April 17, 1883.

1. STREETS — RIGHT OF USE FOR OTHER PURPOSES. — The dedication or condemnation of land for public streets extends to any use, of public interest, for which the municipality may dedicate the surface or the ground underneath, not inconsistent with its use as a public highway.

2. —— Whenever the use of a public street, by the licensee, becomes antagonistic to its use as a public highway, such private use must give way to the public use.

3. —— TELEGRAPH COMPANIES. — A telegraph or telephone company may, in conformity with law and ordinance, plant and maintain its pole on the sidewalk of a street.

4. —— INJUNCTION. — Mere inconvenience resulting to the public from the proper use of a street for telephone poles will not furnish ground for an injunction.

5. —— Incidental injury to abutting property-owners by the proper erection of such poles is not ground for an injunction to prevent their erection.

6. —— DAMAGES — PRACTICE. — If unnecessary injury is done, or threatened, to abutting property by the erection of telegraph poles in the sidewalk of a street, the remedy is an action at law for damages.

APPEAL from the St. Louis Circuit Court, THAYER, J.
*Affirmed.*

MADILL & RALSTON, for the appellant: The plaintiff, as
owner of the fee of the street, had a common-law right, in
the absence of any prohibitory city ordinance, to excavate
the sidewalk and build the walls and sidewalk for basement
purposes. — *Fisher* v. *Thirkell,* 21 Mich. 1 ; *McCarthy* v.
*Syracuse,* 46 N. Y. 194 ; *Dubuque* v. *Mahoney,* 9 Iowa,
450 ; *Bliss* v. *Ball,* 99 Mass. 597 ; *White* v. *Godfrey,* 97
Mass. 572 ; *Lafayette* v. *Blood,* 40 Ind. 62 ; *Philadelphia*
v. *Presbyterian Board,* 9 Phila. 499. The general public
usage in the city of St. Louis, proved at the trial, and from
which the law infers an express or implied license, author-
ized the excavation of the sidewalk for basement purposes
and the building of the walls. — *O'Linda* v. *Lothrop,* 21
Pick. 292 ; *Underwood* v. *Carney et al.,* 1 Cush. 285 ; *Nel-
son* v. *Godfrey,* 12 Ill. 22 ; *Gridley* v. *City of Blooming-
ton,* 68 Ill. 47–50. And such license, having been executed
by plaintiff upon its own property, is irrevocable on well-
settled principles on real property law. — 1 Washb. on Real
Prop. (2d ed.) 82 [*84], chap. 1, sect. 58 ; 2 Washb. on
Real Prop. (2d ed.) 417 [*401, 402], chap. 12, sects. 12,
13 ; *Morse et al.* v. *Copeland et al.,* 2 Gray, 302 ; *Dyer* v.
*Sandford,* 9 Metc. 395 ; *Winter* v. *Brockwell,* 8 East, 308.
The knowledge and acquiescence of the city authorities in
the prosecution of the excavation, and the action of the
sewer commissioners in removing a public sewer from within
the sidewalk on Sixth Street, for the purpose of facilitating
the excavation thereof by plaintiff for basement purposes,
and the payment by plaintiff of the expense of a new iron
sewer inlet, under an agreement with the sewer commis-
sioner, raise an estoppel *in pais,* which precludes both the
city and the defendant corporation from asserting any rights
whatever in said wall and basement, or denying that the
same are the exclusive private property of plaintiff, right-
fully existing under said sidewalk. — 2 Dill. on Mun. Corp.

(3rd ed.), sect. 675, where he cites the following cases as approving the text: *Chicago, etc., R. Co.* v. *Elgin*, 91 Ill. 251; *Chicago, etc., R. Co.* v. *Joliet*, 79 Ill. 25; *Rumsey* v. *Clinton County*, 42 Ill. 225; *Logan County* v. *Lincoln*, 81 Ill. 156; *Leroy* v. *Springfield*, 81 Ill. 114; *Brooks* v. *Reding*, 46 Ind. 15; *Simplot* v. *Dubuque*, 49 Iowa, 630; *Sims* v. *Chattanooga*, 2 Lea, 694. The permission of basements or coal vaults under sidewalks, either by express or implied license, acquiescence, or abandonment, is a legal, legitimate, and proper exercise of municipal authority. — *Lafayette* v. *Blood*, 40 Ind. 62; 2 Dill. on Mun. Corp. (3rd ed.), sect. 699, and cases cited.

HENRY HITCHCOCK, for the respondent: Equity will not grant relief by injunction in respect of injuries which are in their nature purely contingent upon circumstances which may or may not take place. — *Flint* v. *Russell*, 5 Dill. 151, 157; *Rounsaville* v. *Kohlhein* (Sup. Ct. Georgia, Feb., 1882), reported 15 Cent. L. J., July 14, 1882; 1 High on Inj., sects. 742, 743. The proprietor of land over which a public highway has been laid, retains his right in the soil for all purposes which are consistent with the full enjoyment of the easement acquired by the public or by any corporation by authority derived constitutionally from the legislature. — *Denniston* v. *Clarke*, 125 Mass. 216; 2 Dill. on Mun. Corp. (3rd ed.), sects. 687, 688, 690, 698, 699; *Cincinnati* v. *White*, 6 Pet. 431. The owner of property abutting on a street takes it subject to the right of the public to use the street for all the appropriate purposes of a street, whether the fee of the street be in the municipal corporation, or in the state, or in the adjoining proprietor; for the fee in such case is held for the use of the public as a street with all of its incidents. — *City of Morrison* v. *Hinkson*, 87 Ill. 587, 589. The street is legally open and free for the public passage, and for such other public uses as are necessary in a city, and do not prevent its use as a thoroughfare, such as the laying of water-pipes, gas-pipes,

and the like. — *Barney* v. *Keokuk*, 94 U. S. 340.   In numerous cases the supreme court of Missouri has sustained the right of the legislature to grant to a railroad corporation either without reference to the municipal authorities, or mediately through the city charter, the right to lay down its tracks in the streets of a city;   *   *   *   and the provision in the Constitution of 1865, which limited this legislative right, only forbade its exercise by way of special laws. — *Porter* v. *Railroad Co.*, 33 Mo. 128 ; *Lackland* v. *Railroad Co.*, 34 Mo. 259 ; *Tate* v. *Railroad Co.*, 64 Mo. 150 ; *Randle* v. *Pacific R. Co.*, 65 Mo. 325 ; *Atlantic, etc., R. Co.* v. *City of St. Louis*, 66 Mo. 259 ; *Botto* v. *Pacific R. Co.*, 11 Mo. App. 589.

LEWIS, P. J., delivered the opinion of the court.

The plaintiff is owner of a valuable building, erected for mercantile purposes at a cost of about $220,000.   It is bounded on three sides by Olive, Sixth, and Locust Streets, important business thoroughfares of the city of St. Louis, and commands a rental of $40,000 per annum.   On its eastern, or Sixth Street front, the sidewalk is twelve feet wide, composed of stone flags about eight inches thick, each extending across the whole width, and being supported at the curb upon a stone wall which has a depth of twelve feet, and constitutes the outer enclosure of the basement story, thus extended under the sidewalk and occupying so much of the street, below the surface.   This wall is substantially constructed, as a retaining protection against the earth outside, which is of generally moist consistency, and permeated, from time to time, by watery aggregations.   It is supplemented by a thin brick wall on the interior, at a few inches distance, for the better securing of dryness in the basement. The defendant corporation, in prosecuting its business of establishing telephones and telephone connections for the convenience and service of the public, has begun the work of cutting holes at two different points through the side-

walk flagging, just within the curb, for the insertion of vertical poles which are to be about fifty-two feet in length and sixteen inches thick at the base, tapering to a diameter of five inches at the top.  These poles must descend into and through the retaining wall to a depth of seven or eight feet, and will occupy its whole thickness, with the exception of two or three inches on either side.  Telephone wires are to be strung from pole to pole, when properly prepared.  The plaintiff shows that the effects will be highly detrimental to its property and business interests; that the insertion of the poles and their vibrations afterwards will so weaken and injure the wall, that it cannot be restored to its present usefulness as a protection against the earth and moisture; that persons visiting the building daily, in number averaging about five thousand, will be seriously hindered and incommoded in the approaches, and that the rental value of the premises will be very greatly diminished.  Wherefore, the plaintiff asks for a perpetual injunction against the proposed undertaking.  The circuit court denied the injunction, and dismissed the plaintiff's petition.

As to many of the grounds upon which the plaintiff demands relief, they are identical with those presented in a like behalf, for the plaintiff in *Gay* v. *Mutual Union Telegraph Company* (12 Mo. App. 485).  The opinion delivered in that case shows, from the highest authorities, that the dedication or condemnation of public streets in a city does not limit their use to the purpose of passways for persons and vehicles, but extends to every use which may advance the public comfort and convenience, within the legitimate sphere of municipal regulation.  That the particular use proposed was not in contemplation when the dedication was made, is of no consequence.  *Belcher Sugar Refining Co.* v. *Elevator Co.*, 10 Mo. App. 401.  The dedication covers all present and future agencies, not inconsistent with the needs of street travel, and adopted by public authority for the common benefit, whether directly, or through interme-

diary corporations or private persons. In short, the streets of St. Louis are as effectually dedicated to the purposes of a public telegraph system, when established under state and municipal regulations for the common good, as they are to the public travel over their surface. It is further apparent from the opinion referred to, that a telegraph company, conforming to the regulations established by our existing statutes, and by municipal ordinances in St. Louis, may lawfully plant and maintain its poles on the sidewalk of a public street, notwithstanding their measurable obstruction of the thoroughfare, and notwithstanding incidental hindrances or detriment to the owners of abutting property; provided, only, that the work be done in a careful and proper manner, inflicting no injury which will not necessarily result from appliances appropriate to the intended service. It is also shown that, if unnecessary or wilful injury to abutting proprietors be done or threatened, injunction will not lie, and the complaining party must seek redress in damages, at law. The defendant corporation here stands upon the same plane with the telegraph companies, and in our view of the testimony, makes a sufficient showing of compliance with the controlling statutes and ordinances. This general summary disposes of all the questions which counsel have here discussed with much ability, excepting such as arise out of the plaintiff's claim of private property in the retaining wall which the defendants are about to alter in structure, impair in value, or destroy.

It is not to be questioned that the powers conferred by legislative authority upon telegraph or railway companies to use the public streets for the constructions adapted to their respective enterprises, must stop at any invasion of the rights of private property, until adequate compensation to the sufferer shall have been secured, according to the methods prescribed by law. But the first essential in every inquiry whether a right will be invaded by any particular act, is a proper understanding of the nature, extent, and

limitations of the right. It may be laid down as a general rule, that, aside from purely moral privileges, every human right is subject to some qualification. Even the right to live is qualified, in that it may be forfeited for crime. Property rights are especially subject to various qualifications which may restrain or modify, and the most absolute of them must yield to a demand from the sovereign authority, for the public good. If the plaintiff here is entitled to the relief demanded, it must be because its right of property in the retaining wall, or rather, its rights to occupy in that way the place where the wall stands, is not qualified by a superior right in the defendants to disturb it. But if the plaintiff's right is found to be so qualified, then there can be no invasion of that right, in a lawful exercise of the qualifying prerogative.

The plaintiff's title in the lot upon which the building stands is traced to former owners, who, in 1816, did, by their public act effectual to that end, " for themselves, their heirs and assigns forever, appropriate for the use of public streets and ways, all and every part of their respective lands," as set apart for that purpose in the instrument, including Sixth Street, as it now exists, sixty feet wide, from the wall, above the sidewalk, of the plaintiff's building, to the house walls on the opposite side. It is therefore claimed, with a show of right sufficient for the present case, that the plaintiff owns the fee to the centre line of the street, subject only to the public easement dedicated as above. This includes, of course, the space or ground occupied by the retaining wall. But this claim, by its very terms, admits the superior right of the defendants to use the space so occupied. The plaintiff's right is *subject* to the public easement; and the public easement includes, as a logical result of our conclusions in *Gay* v. *Union Mutual Telegraph Company* (12 Mo. App. 485), the use of the earth beneath the surface, as far as may be necessary for the defendant's avowed purposes. So far, then, as the plaintiff's rights re-

late to the original dedication, or the reservation implied therein, they are conclusively qualified in favor of the defendant's superior right, by the terms of the claim itself.

But the plaintiff asserts another claim of impregnable property right in the wall and its location within the street. It is shown to have been the practice for many years, under the ordinary building permits, for builders to extend their basements, or areas, under and athwart the sidewalks, and that the city authorities have uniformly, by their silence and non-interference, acquiesced in this practice, as a proper use of the privileges implied in the permit. It is further shown that, in this instance, the city officers whose duty it should be to take cognizance of such matters, had personal knowledge of the plaintiff's appropriation of the ground, as indicated, and even directly aided in that appropriation, by paying part of the expense, and doing part of the work of removing and altering certain sewer connections, to the end that the plaintiff might have an unobstructed use of the space or ground beneath the sidewalk. These acts, it is claimed, amounted to a virtual grant from an authority having entire control over the subject-matter; and, being prior in date to the permission given by the same authority to the defendant corporation, such grant must be of superior force.

The first fact to be considered in an analysis of this claim is, that the concession to the plaintiff was a benfit conferred on an individual member of the community, so to speak, in the advancement of a mere private interest; while that to the defendant corporation was, in effect, a dedication to the welfare of the public, or rather, a special application to a particular object, of the original dedication made in 1816. If it were within the powers of the city authorities, by the interposition of a private grant, to thwart any purpose of the original dedication, the intentional exercise of such a power should be proved by the clearest testimony; since every presumption must be in favor of a faithful guardianship of the public interests by the officers entrusted there-

with. The facts in the present case fall far short of showing any purpose in the city officers, hostile to the rights or interests of the public. The most that can be gathered from those facts is, as we think, that the plaintiff acquired a license to build its retaining wall, so as not to interfere with the public easement; and that this license was revocable, if not at the pleasure of the authorities, at least whenever the rights of the public, in any lawful use or adaptation of the street, might be found in conflict with its continuance.

A more important question, however, lies behind all this. Has the municipal corporation power to surrender, on any terms, to a mere private interest, a proprietary right in or under a public street, to the effect of excluding the enjoyment of a public use which was contemplated in the dedication? The city authorities are empowered, generally, to open, alter, widen, or even, under certain conditions, to abolish, a public street. But in the exercise of these functions, there is an abiding necessity that every act shall have a direct reference to the common weal. Their acts, when so designed, may not be avoided by mere errors of judgment. The terms of their agency will be fulfilled, so long as they apply their best discretion to the employment of measures for the comfort, convenience, or needs of the community. But, suppose these officers should grant a lease of an entire street to a private person or corporation, with a possessory right to enclose it against all passers, and this without any pretence of benefit to the city, or· the public at large. Can it be doubted that the monopoly would be absolutely void, and that the lessee could never procure its protection or enforcement by judicial aid? Surely not. It would be in direct violation of the terms of the dedication, and therefore not within the powers conferred upon the holders of the trust. What is true of the whole, must be true of a part, whether this part be on or under the surface. The public right of passage would always be held paramount to the proposed monoply or private grant; and

no reason can be shown why any other public right, secured in the same dedication, should not be alike supreme. It need not be disputed, that the municipal authorities may grant a license for any use of the highway, which will not be repugnant to the public easement. But it seems clear that, whenever the continuance of such a license shall be found antagonistic to a legitimate use of the easement, it must give way, at least to the extent of such antagonism.

The application of these principles to the present case is easy. Let it be conceded that the city has granted to the plaintiff all that it was able to grant, for the location, erection, and enjoyment of this retaining wall. It now appears that the sovereign authority, through the city and the defendant corporation, as intermediaries, proposes to devote to a legitimate public use, within the meaning of the dedication recorded in 1816, a part of the street which cannot be so appropriated, without a defeasance, in whole or in part, of the city's grant. The defeasance must result, and the force of the dedication prevail in defendant's favor. The judgment is affirmed. All the judges concur.