THE STATE EX REL. CITY OF SPRINGFIELD and SPRINGFIELD GAS & ELECTRIC COMPANY v. ARGUS COX ET AL., Judges of Springfield Court of Appeals.—36 S. W. (2d) 102.

Court en Banc, March 3, 1931.

*E. A. Barbour, Jr., A. P. Stone, Jr.,* and *Frank B. Williams* for relator.

*Sam M. Wear, Nat W. Benton* and *Arch A. Johnson* for respondents.

RAGLAND, C. J.—Certiorari. In this proceeding relators seek to have quashed, on the ground of conflict, the opinion and judgment of the Springfield Court of Appeals in the case of Mary E. Cunningham, respondent, v. City of Springfield and Springfield Gas & Electric Company, appellants, lately pending before it on appeal from the Circuit Court of Greene County. The rulings of the court and the facts on which they were based, as disclosed by the opinion, are as follows:

"Action for damages for personal injury. Plaintiff recovered and defendants appealed.

"The St. Louis-San Francisco Railway Company was also a party defendant, but by peremptory instruction to the jury a verdict was returned in its favor, hence it is out of the case.

"The plaintiff rode as a guest in the automobile of her husband, who drove to the depot of the railroad company on a dark rainy night to mail a letter. He drove off the west side of the street on to a paved parking space on the south side of the depot and parked his car there while he went through the depot to the other side and deposited his letter in a mail box. He then returned to the car and drove around some other parked automobiles and then turned to drive back east into the street in order to return home. After he passed the east line of the railroad property a little more than eight feet his car collided with an electric light pole situated a few inches west of the west line of the paved part of the street proper and inside of the east line of the sidewalk, and as a result of that collision his wife, this plaintiff, was injured.

"The evidence tends to show that the railroad owns an area of ground on the south side of this depot and abutting on the west side of Main Avenue in the city of Springfield, a distance of about 117 feet. Main Avenue was widened and paved by the city from College Street running north past the area of ground above referred to as belonging to the railroad. From College Street north an integral curb was built on the west side of the paved part to Main Avenue until it reached the South line of the railroad property above described. At that point the curb was discontinued and a concrete sidewalk nine and one-half feet wide connecting with the street paving on the west side thereof and extending west to the property line of the railroad and running north the entire length of the railroad property was constructed by the railroad. There was no curb constructed at the curb line along the railroad property, but instead there was a slight depression there for drainage purposes. Along the entire length of the railroad property there was no curb on the west side of Main Avenue, but the concrete street paving and the concrete sidewalk were connected. The strip of ground owned by the railroad on the west side of Main Avenue and south of its depot had been improved by the railroad as follows: Eighty-four feet on the north side of this strip abutting the west side of Main Avenue had been paved with concrete from said street back west a considerable distance. The remainder of the strip abutting the west side of Main Avenue was covered with chats and its surface was level with the paved portion of the strip and also level with the west line of the concrete sidewalk. The light pole with which the automobile in which plaintiff was riding collided was located about three inches south of the south line of the paved portion of the railroad property, and in the sidewalk portion of the street about seven or eight inches west of the west line of the street paving proper of Main Avenue. In passing from Main Avenue into the area of ground owned by the railroad and in coming back from that area to the street, persons in automobiles drove on both sides of this light pole.

"The petition alleged that this light pole was negligently erected and maintained by defendants in a public driveway without being fenced, guarded or marked in any way so as to apprise persons using said driveway of its presence therein.

"Plaintiff testified that she was keeping a lookout as best she could, but in the darkness and rain she could not distinguish through the windshield objects in front of the car and she did not see the light pole until after the car struck it. That the car was being driven slowly by her husband at the time. Other witnesses also testified that the night was very dark, and in the rain and darkness the pole could not be distinguished by a person coming toward

the street from the railroad property. There was a street light on a bracket on the east side of this pole about eighteen feet above the ground, but it did not throw light west of the pole to any considerable extent. The pole was black and that fact, coupled with the fact that it was raining hard and the night was very dark, made it very hard to see the pole when approaching it from the west. Neither plaintiff nor her husband saw the pole as they drove from the street on to the railroad property and did not know it was there until the car struck it. . . .

"We think the foregoing a sufficient outline of the material facts proven that are favorable to plaintiff. A demurrer to the evidence was filed and overruled and that action of the court is assigned as error. It is practically conceded by respondent that the city and the lighting company had the right to place the light pole where it was placed, but insist that when so placed it was the duty of defendants to protect the users of the driveway by marking the pole in such a way as to apprise parties traveling there of the presence of the pole so that they could avoid striking it in all kinds of weather, and since the evidence most favorable to plaintiff shows that on this occasion the pole was not visible to a person in an automobile driving toward the street from the railroad property on the west, a case was made for the plaintiff. There is another fact that must also be considered in this connection and that is that plaintiff was not driving the car. It was driven by her husband and she occupied the legal status of a guest, and even if her husband were negligent in not discovering the pole and avoiding the collision that negligence was not imputable to her. If defendants were negligent and their negligence caused or helped to cause the collision and consequent injury, she is not barred from recovery by the fact, if it be a fact, that her husband was also negligent. The light company erected and maintained the pole, but did it under the sanction of the city and by its permission, so that if the light company was negligent the city was responsible also. Looking at the physical facts shown by the testimony outlined, we find that while this light pole was located a few inches beyond the curb line of the street in the edge of the sidewalk area, yet the curbing had been stopped some twenty-five or thirty feet south of this pole and hence the pole was located at a point where the street and sidewalk were united and formed a continuous driveway for the use of the public in passing from the street to the railroad depot. Vehicles drove over this driveway on both sides of this pole, so that for the purposes of this case the pole was clearly located in the public driveway unprotected and with nothing to make it visible to persons approaching from the west in the nighttime. The light on the east side of this pole did not show sufficient light to the

west of the pole to make the pole visible to persons approaching it from the west in the darkness of a rainy night. The city and the light company ought to have known that persons were likely to travel over the driveway from the street to the depot at any time in the day or night and in all kinds of weather and ought to have seen to it that this pole was so marked or guarded as to prevent collisions with it.

"It is contended that the portion of the area owned by the railroad and covered with chats was not intended for the use of the public in passing in and out from the street to and from the depot. The physical facts are against this contention. If it were intended that all travel should go north of this pole and on to the paved part of the area belonging to the railroad, then the curb at the west side of the street should have been extended from the south to a point even with the pole which would have induced the public to go around that point before leaving the street to come on to the railroad property. If that were not done, a fence or posts set to prevent traffic from passing in and out over the ground covered with chats could have been placed along the east end of the chatted surface from the south to a point even with or beyond the pole so parties could not pass in and out south of this pole. As it stood, however, with no curb opposite this chatted area and no fence or posts or other obstruction to a free passage of vehicles both in and out south of this pole, coupled with the fact that the surface of the chatted area was level with both the sidewalk and the paved part of the railroad area, amounted to an invitation to the public to use the space south of this pole the same as they used the space north of it if they saw fit to do so. The evidence most favorable to plaintiff shows this pole standing in a public driveway at a place where automobiles passed on both sides of it and if defendants be permitted to maintain it at that place, they should provide some means to render this pole visible to travelers at all angles in all kinds of weather both day and night, and if that were not done then the public should, in some way, have been prevented from passing this pole on the south side.

"It is said that it is the duty of the driver of an automobile to use the highest degree of care to discover and take notice of the existence of such constructions within the limits of street lines as the necessities of street lighting render common and being charged with knowledge of such construction may not proceed as though such construction did not exist and we are cited to Jackson v. Southern Bell Telephone Company, 281 Mo. 360, 1. c. 370, 219 S. W. 655 and Woodson v. Metropolitan Street Railway Co., 224 Mo. 685, 1. c. 699, as sustaining that position. Neither of these cases nor any other that we have found hold that a person who has no actual

knowledge of the conditions is chargeable with knowledge of the presence of a pole in the middle of a street which it is impossible under the conditions at the time for him to see.

"It is clear to us that the location and maintenance of this pole by defendants at the place where it was located with no provision to make the pole visible from the west on a dark rainy night was sufficient to make the question of their negligence one for the jury.

"It is contended that as plaintiff had no business to transact at the depot she was only a licensee while on the railroad property and that the city and the light company owed her no duty as to the location or condition of the light pole. That question is not in this case, for the reason that the accident did not occur on the railroad property. It was stipulated at the beginning of the trial that this pole was located eight feet and some inches east of the east line of the railroad property. The collision occurred off the railroad property and within the lines of the street. The question of a person being an invitee or a licensee does not apply to persons in a public street. Under the evidence in this case, the plaintiff became a traveller upon a public street the instant she reached the line of the street, and the accident occurred over eight feet beyond that line."

Relators contend that the Court of Appeals' ruling, that there was sufficient evidence to take the case to the jury on the question of defendants' liability as for negligence, conflicts with prior decisions of this court. They state their propositions in that regard as follows:

"(1)  Neither the city nor the electric company is liable for the condition of or obstructions in any portion of a private driveway, which may be within the street lines, but outside the way dedicated to and improved for vehicular traffic by the city. [Griffin v. City of Chillicothe, 311 Mo. 648, 279 S. W. 84; Clinkenbeard v. St. Joseph, 10 S. W. (2d) 54, 60.]

"(2)  Since the iron pole in question is a lawful structure, and since it is conceded 'that the city and the lighting company had the right to place the light pole where it was placed,' and since it, therefore, did not constitute a nuisance on a public street, relators were under no duty to fence, guard, or mark said pole in any way 'so as to apprise persons using said driveway of its presence therein.' [Scibert v. Mo. Pac. Ry. Co., 188 Mo. 657; Julia Bldg. Assn. v. Bell Tel. Co., 88 Mo. 258, 266; Gay v. Telegraph Co., 12 Mo. App. 485.]

"(3)  When plaintiff crossed the established curb line, though no curbing was there, she entered the approach to the private driveway of the railroad company, and instantly lost her status as a traveler upon the public street, and thereupon became a licensee or

invitee of the railroad company, which former status she did not regain before she was hurt. Hence, she was not, when the collision occurred, a traveler upon the street. [Glaser v. Rothschild, 211 Mo. 180, 184-5; Carr v. Mo. Pac. Ry. Co., 195 Mo. 214, 225; Griffin v. City of Chillicothe, supra.]''

(1) This contention is based on a misinterpretation of the facts. At the point where the pole was located there was no segregated sidewalk space intended for the use of pedestrians only. On the contrary the street at that place, all of it up to the line of the railroad property, was not only paved but, all the physical facts and circumstances considered, clearly designed for vehicular traffic. So that the pole was both within the street and within that portion of it which was used, and intended to be used, for vehicular travel.

Griffin v. City of Chillicothe and Clinkenbeard v. St. Joseph, supra, are not comparable on the facts. In the first the sole question presented for determination was whether a city was required to repair or guard a hole ''outside of the paved portions of the street and its curbing, which designated the place for and confined the limits of ordinary vehicular travel over the street.'' In the second plaintiff received his injury through driving his automobile from the paved portion of the street over the curb and against an electric light pole alleged to have been negligently maintained in the parkway. But the parkway was covered with trees and shrubs and obviously not intended for travel by automobile.

The ruling in question clearly does not contravene our holding that a city has the right to improve and open for public travel only a portion of a platted street, and is not liable for injury to persons using that portion not opened or improved for public use, and further, that extensive use of abutting property by the public does not change such rule of non-liability.

(2) The cases cited under this head are wide of the mark. In the case under review plaintiff's action did not proceed on the theory that the placing of the light pole in the portion of the street used for vehicular travel in and of itself constituted an unlawful obstruction—a nuisance *per se*, but that defendants were negligent in failing to so mark or equip the pole that it would be visible to travelers on the street at all times of day and night and in all kinds of weather. The Court of Appeals assuming, without deciding ''that the city and lighting company had the right to place the light pole where it was placed,'' held that they were liable to plaintiff notwithstanding, if guilty of negligence in the respects charged and such negligence was the proximate cause of his injuries. The principle is not new, nor is it in conflict with decisions of this court. [See Boyd v. Kansas

City, 291 Mo. 622, 237 S. W. 1001, and cases cited.] The right to place the pole in the portion of the street used for vehicular travel, if defendants had such right, did not relieve the city of its duty to exercise ordinary care to keep the street reasonably safe for travel by day and night. Had the pole been equipped with some of the many devices used in modern highway maintenance to bring to the attention of travelers by night the existence of dangerous conditions, it might not have materially impaired the safety of the street; as it was, it was a dangerous obstruction.

(3) This contention is also without a basis of fact. The pole was in a public street and in the portion of it used for vehicular travel; it was not in a private driveway. The fact that the curbing was left out and the pavement of the street continued uniformly and on the same general level to the paved and chatted area-ways of the railroad company, for the purpose of giving the public convenient access to those places, or ingress and egress to and from them, did not make the street up to the line of the railroad property any less a public thoroughfare. The Court of Appeals therefore, very properly held that there was no question of licensee or invitee in the case.

Our writ was improvidently issued and should be quashed. It is so ordered. All concur.