Walter A. EILERS, (Plaintiff) Appellant,

v.

UNION ELECTRIC COMPANY, a Missouri Corporation, (Defendant) Respondent.

No. 31465.

St. Louis Court of Appeals.

Missouri.

Dec. 15, 1964.

Motion for Rehearing or to Transfer to Supreme Court Denied Jan. 11, 1965.

**428**

Maurice Schechter and Victor R. White, Jr., St. Louis, for appellant.

Keefe, Schlafly, Griesedieck & Ferrell, Robert J. Keefe, William H. Ferrell, St. Louis, for respondent.

WOLFE, Judge.

This is an action for damages arising out of personal injuries and property damage sustained by the plaintiff when the automobile which he was driving collided with a utility pole on the shoulder of the highway over which he was driving. The plaintiff contended that the collision was caused by his automobile striking a pole lying on the shoulder of the highway. He contended that this pole caused him to lose control of his automobile and caused it to collide with an upright pole. Both the upright utility pole and the pole on the shoulder belonged to the defendant. The jury returned a verdict for the plaintiff awarding him $10,000 damages. The defendant filed a motion to set aside the verdict and judgment and to enter a judgment in accordance with its motion for a directed verdict at the close of all of the evidence, and in the alternative to grant a new trial. The court overruled the motion to set aside the verdict and judgment and to enter a judgment for the defendant; but it sustained the motion for a new trial. In due time the plaintiff appealed from the order granting a new trial, and he seeks in this appeal to have the judgment reinstated.

The plaintiff lived in the City of St. Louis. At the time of trial he was employed by the United States Post Office as a clerk, and had been so employed for twenty-six years. He was fifty-two years of age. On Sunday, May 22, 1960, he had been visiting friends in Crystal City, Missouri. At about 3:30 o'clock in the afternoon he left Crystal City to return to St. Louis. He drove northwardly on Highway 61, which runs in a general north and south direction. It is a paved highway and consists of four lanes of traffic; two for northbound traffic and two for southbound traf-

fic. On the east side, which was plaintiff's side of travel, there was a shoulder of a width estimated to be five or six feet. This was surfaced with gravel, but had grass and weeds growing upon it. The defendant Union Electric Company had an easement for the construction and maintenance of utility poles on the shoulder mentioned, and they did maintain a line of poles on the east shoulder.

The day was sunny and bright, but the sun was not bothering the plaintiff, as it was to his rear as he traveled northwardly. He reached a place about two miles north of the St. Louis County line where the road was straight. There were curves to be encountered farther on where he thought the sun would bother him, so he decided to pull off of the pavement and stop on the shoulder to adjust his sunshade and put on his sun glasses. The traffic was heavy and traveling at a speed of about 50 miles per hour. He turned on his right directional signal and slowed his car by applying the brakes. He was traveling between 35 and 40 miles per hour when he turned onto the shoulder. On the shoulder, about 35 or 40 feet ahead of him, was a standing utility pole which he planned to pass with about one foot of clearance so that he could stop in the space beyond it.

Just before reaching the pole which he intended to pass, his car struck something that blew out a tire and caused him to lose control. His car ran into the upright utility post. It broke the post off so that it was hanging by the wires that it carried. The automobile continued on and came to rest on the shoulder beyond the pole. The plaintiff was rendered unconscious for a short period by reason of the impact. After regaining consciousness he walked back to the area of the collision to see what his car had struck prior to its collision with the upright pole. There he saw a piece of a utility pole south of the pole which he had struck. This piece of pole was nearer the pavement than the standing pole had been. The end of it extended beyond the standing pole toward the pave-

ment. The plaintiff stated that the gravel had been disturbed for a distance of four feet south of where the pole lay, as though it had been shoved by the impact of his automobile upon it. He also said that the end of the pole was splintered.

There was testimony that the piece of pole had been lying on the shoulder for about a month prior to the collision. The pole had a "U" on it, which was a mark used by the Union Electric to identify its poles. The plaintiff stated that the pole on the ground was concealed from his view by the high grass and weeds in which it was lying. While the plaintiff was still at the scene of the accident, a highway patrolman arrived and questioned him. The plaintiff stated that he talked to the patrolman ten or fifteen minutes. He did not tell him about any pole lying in the grass, but stated that he lost control of the car. He testified that at the time he talked to the patrolman he was still in a state of shock and in pain. The plaintiff left the scene of the accident in a tow truck which had been called to remove his automobile.

The plaintiff called as witnesses four employees of the Union Electric. One of them was a supervising engineer of the southern district, and he testified that the defendant's records showed that no work had been done in the area of the accident since 1926 except for the replacement of the pole knocked down by the plaintiff. He stated that a "U" on a pole would indicate that it was the property of the Union Electric Company. An assistant overhead supervisor was called, and he described the condition of the splintered pole that had been struck and his work in replacing it. He said that it was cut down and the parts so cut were pushed to the east of the shoulder until they could be picked up. On cross-examination he stated that there were no poles on the ground in the area where the broken pole stood. A line crew foreman and a troubleman who worked on replacing the broken pole told of the condition of the pole, and they also testified that there was no pole or broken pieces of a pole

in the area of the accident at the time they worked there.

Three photographs of the area were put in evidence which the plaintiff said he had taken about a month after the accident. These showed a portion of a pole on the ground at the foot of the new upright pole, and the plaintiff identified it as the pole that he had struck and saw there after the accident. All of the foregoing constituted the pertinent evidence offered by the plaintiff. He offered evidence relating to his injuries and property damage, which we will not set out because none of the points raised touch upon it.

The defendant's only witness who testified in relation to the accident was a Missouri Highway patrolman who came to the scene. He testified that he interviewed the plaintiff, and that the plaintiff said, "I was having trouble with the sun and lost control." The trooper testified that he had walked back and forth over the area, and that there was no pole on the ground.

As stated, there was a verdict and judgment for the plaintiff. The defendant's motion for a new trial contained an assignment of error relating to the verdict-directing instruction that had been given on behalf of the plaintiff. The instruction required a finding that a section of a utility pole had been placed by the defendant on the shoulder of the road which constituted a traveled portion of the highway, and that the section of the pole was concealed by grass and weeds. It then continues with a required finding of facts relating to the plaintiff operating his automobile on the shoulder of the road, and striking the section of the pole which caused him to strike the standing pole. There was no requirement in the instruction that the jury should find that the acts of the defendant were negligent.

The court sustained defendant's motion for a new trial on the ground that the instruction was erroneous, and specified as error points 1(a), 1(b), 1(d), and 1(h) contained in the motion. Point 1(a) was directed to the failure of the instruction to require a finding that the acts charged against the defendant were negligent. Point 1(b) was that the instruction was outside the scope of the pleadings. Point 1(d) was that the instruction failed to require a finding that the section of the pole had been permitted to remain on the highway for an unreasonable length of time. Point 1(h) was that the instruction failed to require a finding that the defendant knew that the section of the pole was located on the highway in a position where it would be hazardous for motorists using the shoulder.

■ At the outset of the case the plaintiff's petition contained two counts— one of negligence, and the other charging the defendant with the maintenance of a nuisance. Upon motion of the defendant the nuisance count was dismissed, and the trial was on the first count charging negligence. After the trial and the filing of the motion for a new trial by the defendant, the plaintiff sought to amend his petition to state an action for the maintenance of a nuisance. But this was denied by the trial court. Here the plaintiff first seeks to justify the instruction on the ground that the defendant did in fact maintain a nuisance by leaving the section of the pole on the shoulder, and that he should have been allowed to amend his petition at the time when he requested permission to do so. We are not, however, concerned with this point as we have reached the conclusion that the instruction was sufficient to instruct the jury on the negligence count of the petition under which the case was tried.

■ The appellant's second contention is that the instruction was not erroneous in failing to require that the facts hypothesized constituted negligence because the facts, if true, constituted negligence as a matter of law. The duty generally rests upon the jury to determine whether the facts hypothesized and found by them constitute negligence. McCollum v. Winnwood

Amusement Co., 332 Mo. 779, 59 S.W.2d 693. But where the facts properly hypothesized call only for the conclusion that they constitute negligence—and with that conclusion no reasonable men can disagree—it is not necessary to submit the question of negligence to the jury. The law draws the conclusion in such cases. Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W. 2d 914; McCaffery v. St. Louis & M. R. Ry. Co., 192 Mo. 144, 90 S.W. 816; Munden v. Kansas City, Mo., 225 Mo.App. 791, 38 S. W.2d 540; Keaton v. Good, Mo.App., 350 S.W.2d 119.

■ We held many years ago, in Denny v. Virginia Bridge & Iron Co., 150 Mo. App. 72, 129 S.W. 714, that the placing of an obstruction in a place which people were "licensed" to use was negligence. We consequently hold that the instruction was not erroneous in failing to require that the jury find that the facts hypothesized constituted negligence.

■ That which we have said above disposes of the point relied on by the trial court, which stated that the instruction was erroneous because it went beyond the scope of the pleadings. The petition charged negligence, and the facts constituting the negligence charged are fully stated in the instruction.

■■ The remaining point relied upon by the trial court in granting a new trial, as stated, was the failure of the instruction to require a finding that the section of the pole had been on the highway for an unreasonable length of time prior to the accident, and that there was no finding required that the defendant knew, or should have known, it was there. The charge here was that the defendant placed the section of the pole where it was. If the offending article or substance is placed by a defendant or its agents or employees where it will harm others, the defendant then has actual or constructive notice of its being there. So the question of time and notice is no longer present. Hartmann v. St. Louis-

San Francisco Railway Co., Mo.App., 280 S.W.2d 442; Wood v. Walgreen Drug Stores, Mo.App., 125 S.W.2d 534; Armstrong v. Kroger Grocery & Baking Co., Mo.App., 78 S.W.2d 564.

■ From the foregoing we conclude that the trial court erred in granting a new trial upon the grounds stated in its order. The respondent, however, reminds us that in defending the action of the trial court in sustaining the motion it is not confined solely to the grounds specified by the court, and that if the order sustaining the motion for a new trial may be upheld on other assignments in the motion, it is entitled to have them reviewed. This is the rule as stated in Overton v. Tesson, Mo.Sup., 355 S.W.2d 909; Cantwell v. Zook, Mo.Sup., 250 S.W.2d 980; State ex rel. Spears v. Hughes, 346 Mo. 421, 142 S.W.2d 3.

■ The instruction required a finding that the pole section was placed on the shoulder by the defendant, and it was contended in defendant's motion for a new trial, and is contended here, that there was no evidence to support this. The plaintiff's evidence located the pole section upon the shoulder of the road, as we have stated above. This was in an area where the defendant had an easement to maintain power lines on such poles. The pole had the mark that identified it as a pole belonging to the defendant. This gave rise to a valid inference that it had been placed there by the defendant. We consequently rule this point against the respondent.

The second point raised by the respondent is that the court erred in not sustaining its motion to set aside the verdict and enter a judgment for the defendant. It is asserted that the plaintiff was guilty of contributory negligence as a matter of law. It is argued in support of this contention that the plaintiff was negligent in turning onto the shoulder which had grass and weeds upon part of it, at a speed of 35 to 40 miles per hour. We are cited to some cases wherein the plaintiff was held to be negligent as a matter of law, but all of them are readily

distinguishable from the facts before us. Here there was in evidence photographs of the area showing a level, gravel-covered shoulder, covered in part with grass. The only evidence as to the plaintiff's speed were estimates given by the plaintiff and one of his witnesses, and this ranged from 30 to 40 miles per hour.

We cannot say, from a consideration of all of the evidence favorable to the plaintiff, that the only conclusion which could be drawn is that the plaintiff was negligent, and that his negligence was the proximate cause of his injury. This is what we would be obliged to do if we held the plaintiff negligent as a matter of law. Dye v. Geier, Mo.Sup., 345 S.W.2d 83; Kickham v. Carter, Mo.Sup., 314 S.W.2d 902; Highfill v. Maier, Mo.App., 379 S.W. 2d 191.

The order granting a new trial is reversed and the cause remanded with directions to reinstate the judgment for the plaintiff.

RUDDY, P. J., and ANDERSON, J., concur.