**HOOD–RICH, INC., Plaintiff–Appellant,**

v.

**The COUNTY OF PHELPS, Missouri, Defendant–Respondent**

No. 18694.

Missouri Court of Appeals, Southern District, Division One.

Feb. 15, 1994.

Motion for Rehearing or Transfer to the Supreme Court Denied March 8, 1994.

Application to Transfer Denied April 26, 1994.

Richard E. Dorr, Dorr, Baird & Lightner, P.C., Springfield, for plaintiff-appellant.

No appearance, for defendant-respondent.

PARRISH, Chief Judge.

Hood–Rich, Inc., (Hood–Rich) appeals from a judgment entered in favor of the County of Phelps, Missouri (Phelps County), in an action in which Hood–Rich sought to recover fees for architectural services. This court reverses and remands.

Hood–Rich's petition was in two counts. Count I alleged that Hood–Rich is a Missouri corporation engaged in the business of providing architectural and engineering services. It stated that on October 24, 1989, discussions were conducted between Hood–Rich and Phelps County about the possibility of entering into a contract whereby Hood–Rich would provide architectural services to the county "for purposes of analyzing and selecting a site, remodeling or renovating the existing building, or constructing a new building, to house the county courthouse of Phelps County."

The petition stated that the parties discussed that Phelps County would need to obtain financing for the project "including the possibility of seeking public approval of a sales tax or bond issue." The pleading alleged that the parties agreed to work together to obtain financing for the project; that they "discussed the fact that it was sometimes necessary to present the financing proposal to the voters on more than one occasion to ultimately get approval." It stated that "a formal written contract for [Hood–Rich] to provide said architectural services to [Phelps County]" was entered into on November 9, 1989; that "[i]t was further agreed that it would be helpful for obtaining approval of the financing of the project to have [Hood–Rich] complete the schematic design portion of [its] work before the proposal was presented for public approval."

Count I alleged, "Based on [Phelps County's] representations that it had no funds presently available to pay for the schematic design phase of the project and the assurances by [the county] that it would make a good faith effort, including more than one attempt, to obtain approval of the financing for the project, [Hood–Rich] agreed that the time for payment ... for the schematic design phase of [Hood–Rich's] work could be delayed until a sales tax or bond issue [was] approved."

Hood–Rich alleged that "based on the written agreement and the representations of [Phelps County], [it] proceeded to perform its duties under the contract, including ascertaining the requirements of the project, preparing schematic design studies, . . . and the preparation of a preliminary cost estimate." Additionally, according to Count I, Hood–Rich assisted the county in "their presentation of the proposal to the public in advance of a special sales tax election that was held on April 3, 1990." The petition stated that the April 3 sales tax issue failed to pass. On June 4, 1991, according to the petition, another election was conducted and Phelps County voters approved a sales tax for use to finance the courthouse project. The pleading alleged that, after the April 3, 1990, election, although Hood–Rich remained ready and willing to proceed with additional work to assist with efforts to obtain approval of financing, the county refused to work with Hood–Rich and engaged the services of other architects to continue the work begun by Hood–Rich.

According to the petition, after the June 4 election, Hood–Rich undertook to prepare construction plans and complete the project, including completion of "the schematic design phase of the project"; that under the terms of the contract the parties had signed, the amount due Hood–Rich for the work performed was $51,324. Hood–Rich, in Count I, sought recovery of that amount.

Count II alleged that the reasonable value of the work Hood–Rich performed was $51,324 and that Phelps County derived benefits from the work. Count II sought recovery of that amount as an alternative claim for relief based on *quantum meruit* and § 431.100.[1]

Phelps County filed a motion requesting the trial court to "dismiss [Hood–Rich's] Petition, or in the alternative that judgment be entered on the pleadings in favor of [Phelps County] and against [Hood–Rich], or in the further alternative, that summary judgment be entered in favor of [Phelps County] and against [Hood–Rich]." The motion alleged:
1. [Hood–Rich's] Petition fails to state a cause of action against [Phelps County].
2. [Hood–Rich's] Petition fails to state a cause of action for which relief may be granted. Attached hereto is the affidavit

of Lucie Smith which is incorporated by reference.

The attached affidavit of Lucie Smith stated:

I, Lucie Smith, first being duly sworn upon my oath state:

1. That I am County Clerk for Phelps County, Missouri;

2. That as County Clerk I am legal custodian of all records and minutes of County Commission;

3. That at the time Plaintiff Hood Rich and Defendant Phelps County contracted to design a new courthouse there was not an unencumbered balance to which said contract was to be charged;

4. That at the time of said contract neither bonds nor taxes had been authorized by vote of the people for the purposes of funding said contract;

5. That the records and minutes of Phelps County Commission reflect no other agreement or additions to said contract, but contain only the said contract.

Further, Affiant saith not.

/s/ Lucie A. Smith
Lucie Smith

The clerk's signature was acknowledged by a notary public.

Hood–Rich filed suggestions in opposition to the motion, including as Exhibit "A" to its suggestions a copy of the written contract. An officer of the company, Jack Hood, filed an affidavit that stated circumstances relative to the negotiations between Hood–Rich and Phelps County that led to the execution of the contract.

The trial court found that "said motion should be sustained" and entered judgment "that [Hood–Rich] have and recover nothing upon its petition against [Phelps County]." Although the trial court did not specify whether its ruling was intended as a ruling on the county's motion to dismiss, motion for judgment on the pleadings or motion for

1. References to statutes are to RSMo 1986.

summary judgment, all of which were part of a single pleading, this court considers the order to be a summary judgment because matters outside the pleadings were presented to and not excluded by the trial court. *See* Rule 55.27(a).

■ This court's review of a summary judgment "is essentially *de novo.*" *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). As such, "[t]he criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* A summary judgment is proper if the "motion for summary judgment and response thereto show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 74.04(c)(3).

Hood–Rich's first point on appeal asserts the trial court erred in granting judgment for Phelps County on Count I of the petition, the action for breach of contract, because there were genuine issues of fact for determination. Point I alleges that Phelps County did not establish that it had a legal right to judgment "in that the valid, written contract was enforceable because it fully complied with § 432.070 R.S.Mo. (1986) and it did not violate § 50.660 R.S.Mo. (1986) under the County Budget Law."

Section 432.070 states:

No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.

The applicable provision of § 50.660 states:

No contract or order imposing any financial obligation on the county is binding on the county unless it is in writing and unless there is a balance otherwise unencumbered to the credit of the appropriation to which it is to be charged and a cash balance otherwise unencumbered in the treasury to the credit of the fund from which payment is to be made, each sufficient to meet the obligation incurred and unless the contract or order bears the certification of the accounting officer so stating; except that in case of any contract for public works or buildings to be paid for from bond funds or from taxes levied for the purpose it is sufficient for the accounting officer to certify that the bonds or taxes have been authorized by vote of the people and that there is a sufficient unencumbered amount of the bonds yet to be sold or of the taxes levied and yet to be collected to meet the obligation in case there is not a sufficient unencumbered cash balance in the treasury.[2]

■ In reviewing the summary judgment, this court considers the record from the trial court in the light most favorable to Hood–Rich, the party against whom the judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp., supra; Zafft v. Eli Lilly & Co.*, 676 S.W.2d

2. The requirements of this statute are met by a contract being presented to the county budget officer for endorsement. *See Traub v. Buchanan County*, 341 Mo. 727, 108 S.W.2d 340, 342 (1937). "If the cash is on hand or has been provided for, it is the duty of the auditor or budget officer to make such indorsement upon the order or contract. If not, he merely refuses to make the indorsement." 108 S.W.2d at 342. The requirement of § 50.660 that the county budget officer must certify that "bonds or taxes have been authorized by vote of the people and that there is a sufficient unencumbered amount of the bonds yet to be sold or of the taxes levied and yet to be collected to meet the obligation in case there is not a sufficient unencumbered cash balance in the treasury" to pay the contract obligation is ministerial. "This is a mere matter of bookkeeping." *Traub, supra.*

241, 244 (Mo. banc 1984); *Cooper v. Finke*, 376 S.W.2d 225, 228 (Mo.1964). Hood–Rich pleaded the existence of the contract. The affidavit of the county clerk that accompanied Phelps County's motion for summary judgment substantiates that the parties had entered into a contract for the design of a new courthouse. The existence of a contract is undisputed.

The question presented is whether the provision of § 50.660, quoted above, makes the contract nonbinding on Phelps County. Hood–Rich contends the contract includes a condition precedent whereby, until the tax levy to fund the proposed courthouse was approved by Phelps County voters, Phelps County incurred no financial obligation.

■ "A condition precedent is an act or event that must be performed or occur, after the contract has been formed, before the contract becomes effective." *Historic Hermann, Inc. v. Thuli,* 790 S.W.2d 931, 936 (Mo.App.1990). Contract provisions are construed as conditions precedent, however, "only if unambiguous language so requires or they arise by necessary implication." *Juengel Const. Co. v. Mt. Etna, Inc.,* 622 S.W.2d 510, 513 (Mo.App.1981).

The contract provided for payment of a "basic fee." The basic fee was based on construction costs of the project. It was calculated as follows:

0 to $1,000,000 . . . . . . . . . . . . . . . .  6%
$1,000,000 to $2,000,000 . . . . . . . . .  5½%
$2,000,000 and up . . . . . . . . . . . . .  5%

The fee was payable in increments "in proportion to services performed to increase the compensation . . . to the following percentages of the Basic Fee at the completion of each phase of the Work:

\*    Schematic Design Phase . . . . . .  15%
Design Development Phase. . . .  35%
Construction Documents Phase  75%
Bidding or Negotiation Phase  80%
Construction Phase . . . . . . . . . . .  100%

\* Schematic design phase billing will not be due until after passage of a sales tax or bond issue to finance the project."

■ The language in the written contract between Hood–Rich and Phelps County is unambiguous. Nothing was required to be paid at the time the contract was executed. Unless and until a sales tax or bond issue was passed to pay for the costs of construction, Phelps County was not obligated to pay Hood–Rich. The "time of said contract," to which the clerk's affidavit referred, was of no significance.

The contract between Hood–Rich and Phelps County included a condition precedent. The condition precedent was the passage of a sales tax or bond issue to finance the construction of the courthouse.[3] There was no showing that the contract was not enforceable against Phelps County by reason of § 50.660. Point I is well taken.

Determination of Hood–Rich's first point requires that the judgment be reversed. In view of the disposition of Point I, Point II that is directed to Hood–Rich's alternative theory of recovery presents nothing for review at this time. The judgment is reversed and the case remanded.

CROW and SHRUM, JJ., concur.

MONTGOMERY, J., recused.

---

3. In *Jablonsky v. Callaway County,* 865 S.W.2d 698 (Mo.App.1993), the Western District of this court held that an architect could not recover from a county on a contract absent a certificate from the budget officer that there was an unencumbered balance of funds sufficient to meet the obligation. *Id.* at 700. The facts in *Jablonsky* differ from this case. In *Jablonsky,* the act that was required in order for the contract to become effective, i.e., passage of a bond issue, did not occur—almost 8 years after the contract was signed, a sales tax was passed, not a bond issue.