**Deana BAKER and William Baker,
Plaintiffs–Appellants,**

v.

**EMPIRE DISTRICT ELECTRIC
CO., Defendant–Respondent.**

Nos. 22968, 22969.

Missouri Court of Appeals,
Southern District,
Division One.

May 16, 2000.

Motion for Rehearing or Transfer to
Supreme Court Denied June 6, 2000.

Application for Transfer Denied
Aug. 29, 2000.

Wm. G. McCaffree, McCaffree, Landoll & Slaby, Nevada, for appellants.

John S. Dolence, Gary C. Lentz, Spencer, Scott & Dwyer, P.C., Joplin, for respondent.

JOHN E. PARRISH, Judge.

Deana Baker appeals a summary judgment in favor of Empire District Electric Co. (Empire) in an action she brought to recover damages for personal injuries sustained as a result of an automobile accident. The automobile in which Mrs. Baker was a passenger was involved in a collision with another vehicle. The other vehicle struck a utility pole owned by Empire. The pole broke and electrical

lines it supported came in contact with the vehicle in which Mrs. Baker was a passenger. That appeal is No. 22968.

William Baker, Deana Baker's husband, was driving the automobile in which Mrs. Baker was a passenger. He appeals a summary judgment in favor of Empire in an action he brought for damages for personal injuries he sustained. His appeal is No. 22969. This court consolidated the two appeals. The summary judgment in each case is affirmed.

Empire filed a motion in this court seeking to strike the brief filed by appellants. The motion points to various violations of Rule 84.04 in appellants' brief. The brief's statement of facts includes argument contrary to requirements of Rule 84.04(c). It does not contain page references to the legal file that makes up the record on appeal as required by Rule 84.04(i). Not all of the points relied on (as well as subpoints under the points) concisely state legal reasons that support the alleged error as required by Rule 84.04(d)(1)(B). In sum, the brief is excruciatingly difficult to work with. This court is reluctant to say the brief does not impede the disposition of the appeals on the merits. However, by the exercise of painstaking patience, this court concludes that the issues about which appellants complain can be sufficiently identified to permit those issues to be addressed on the merits. One should not infer, however, that such violations of Rule 84.04 will be overlooked in the future.[1]

■ The argument portion of appellants' brief is not always limited to the issues stated in the point relied on to which the argument is directed. Questions not identified in a point relied on are considered abandoned. *Schmidt v. Warner*, 955 S.W.2d 577, 583–84 (Mo.App.1997). Questions advanced in the argument portion of appellants' brief that were not identified in points relied on will not be addressed. *Berger v. Huser*, 498 S.W.2d 536, 539 (Mo.1973); *Schmidt v. Warner, supra.*

Identical judgments were entered in the case brought by Mrs. Baker and the one brought by her husband. The judgments recite the facts on which they are based:

> The undisputed facts necessary for ruling upon [Empire's] Motion[s] for Summary Judgment, are that on the date in question Plaintiff William Baker was operating a motor vehicle on Cedar Road in Jasper County, Missouri. Plaintiff Deana Baker was a passenger in the vehicle being driven by her husband. [Empire] maintained a pole upon which were wires used for conducting electricity. The pole was located off of the northwest corner of the intersection of Cedar Road and County Road 11. In the intersection of Cedar Road and County Road 11 the Baker vehicle collided with another vehicle. The other vehicle struck the pole causing it to fall and the Baker vehicle came to rest in the approximate location where the pole had been located. The pole was located some four to seven feet from the paved portion of the intersection. The Baker vehicle was "energized" by the downed electric lines and both Plaintiffs suffered injuries from the electricity entering their bodies.

---

1. The difficulty in working with the appellants' brief cannot be overstated. It designates five narrations as "Points Relied On." "Point I" contains three lengthy sub-points, one of which includes five citations of cases as part of its narrative. "Point III" has two sub-points. "Point IV" has two. "Point V" has three, the third of which is divided into three numbered postulates. As stated in *Jones v. Barnes*, 463 U.S. 745, 752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), quoting from Jackson, *Advocacy Before the United States Supreme Court*, 25 Temple L.Q. 115, 119 (1951), "'The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases.'" *Jones* suggests, "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751–52, 103 S.Ct. 3308.

Both Plaintiffs claim [Empire] was negligent in the placement of the pole and in failing to properly equip the wires so that they continued to conduct electricity even after the pole was knocked down following the accident. There is in addition a negligence per se claim for violation of the National Electric Safety Code and a count under the theory of Res [sic] ipsa loquitur. All of the claims of both Plaintiffs are negligence claims.

The criteria for testing the propriety of summary judgment on appeal are no different than those employed by the trial court in determining whether to grant a motion for summary judgment initially. *Hood–Rich, Inc. v. County of Phelps*, 872 S.W.2d 584, 587 (Mo.App.1994). As explained in *Woodfill v. Shelter Mut. Ins. Co.*, 878 S.W.2d 101 (Mo.App.1994):

This court's review of a summary judgment "is essentially *de novo*." *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). However, "[t]he questions for decision on appeal are those stated in the points relied on." *In re Matter of Trust of McDonald*, 858 S.W.2d 271, 280 (Mo. App.1993).

*Id.* at 102.

The petitions filed in each case sought recovery on the same theories. Each petition alleged that Empire negligently located and failed to barricade the utility pole that was struck and knocked over (Counts I and III); that Empire negligently installed and maintained the utility pole (Count II and III); that the location of the pole amounted to negligence per se by Empire (Count IV); that Empire failed to exercise the requisite degree of care in locating, constructing and maintaining the utility pole so that it was a public nuisance (Count V); and, alternatively, that Empire was responsible for Mr. Baker's and Mrs. Baker's injuries on the theory of res ipsa loquitur (Count VI).

Empire's motion for summary judgment in each case alleged there was no genuine issue of fact; that:

a. On or about May 22, 1993, there was an automobile collision involving a vehicle driven by Everett J. Kelly and a vehicle driven by William F. Baker at the intersection of Cedar Road and County Road Number 11 in Jasper County, Missouri.

. . .

c. The Baker vehicle failed to stop at the intersection and struck the right rear of the Kelly vehicle.

e.[2] As a result of the collision, the left rear of the Kelly vehicle struck Empire's utility pole, breaking it.

f. Empire's utility pole was off of the paved and improved portion of the roadway.

g. A replacement pole was inserted into the same hole that held the pole broken off in the collision.

h. As a result of the collision, the Baker vehicle slid off the pavement and normally traveled portion of the roadway, and came to rest over the original spot where the utility pole had been standing.

i. As a result of the breaking of the utility pole, Empire's transmission lines came to the ground and plaintiff was electrocuted at the passenger door exit of the Baker vehicle.

j. Plaintiff's cause of action against Empire is based upon allegations of negligence.

[Citations to pleadings, discovery documents and affidavits in support of the summary judgments are omitted.]

Empire asserted that the facts disclosed no duty that was breached; that it was not

2. The same motion for summary judgment was filed in both cases. It did not include a paragraph "d."

liable for Mr. Baker's or Mrs. Baker's injuries. Mr. and Mrs. Bakers' responses to Empire's motions denied allegations f, h, i and j.

The trial court held that the actions were based on negligence; that, based on *Clinkenbeard v. City of St. Joseph*, 321 Mo. 71, 10 S.W.2d 54 (1928), Empire was not liable. Empire's motion for summary judgment in each case was granted. Judgment was entered for Empire on all counts in each case.

■ Point I asserts that *Clinkenbeard* does not apply to the facts of this case. Point I argues that *Clinkenbeard* applies only to (1) claims by occupants of vehicles that struck poles, (2) claims involving poles located where vehicular use is not invited or expected, (3) claims in which injuries resulted from impacts with poles rather than from escape of high voltage or (4) circumstances in which a utility has no forewarning of a dangerous condition by prior accidents or is not otherwise "charged with actual knowledge of hazards it created."

In *Clinkenbeard* an automobile driven by the plaintiff collided with a utility pole that was "about three feet" from the paved roadway. 10 S.W.2d at 55. A six to eight-inch curb bordered the paved roadway. The driver sought damages for injuries he sustained in the accident from the utility company that placed and maintained the pole at the location of the accident and from the city of St. Joseph on whose street he had been traveling. He contended the utility company was negligent in placing the pole where it did, in failing to guard the pole and in abandoning the pole; "that the same could and should have been removed or guarded or lighted" so that the public boulevard by which it was located would have been "rendered ... in a reasonably safe condition for public travel." *Id.* at 58. The trial court in *Clinkenbeard*

entered a directed verdict in favor of both defendants.[3] On appeal the court held that neither the utility company nor the city was negligent because the pole was "entirely and wholly outside of the traveled and improved roadway ... set aside and designated ... for ordinary vehicular travel and use of the public." *Id.* at 62.

*Clinkenbeard* has been relied on in numerous other cases involving utility poles and negligence claims against the utility companies owning those poles. In *Noe v. Pipe Works, Inc.*, 874 S.W.2d 502 (Mo.App. 1994), a motorcycle ran off a two-lane road to the right as it approached a truck from the rear. The motorcycle crashed into a utility pole severely injuring its rider. The utility pole was 40 to 56 inches from the paved portion of the road. An action was brought on behalf of the rider of the motorcycle against the utility that owned the pole, Union Electric Co., alleging the utility "negligently maintain[ed] the utility pole too close to the road." *Id.* at 503. Summary judgment was granted. It was affirmed on the basis of *Clinkenbeard*. The court observed that *Clinkenbeard* held there was no duty owed by a utility company when the operator of a motor vehicle struck its pole after the motor vehicle left the road.

*Dokmo v. Southwestern Bell Telephone Co.*, 965 S.W.2d 953 (Mo.App.1998), and *Godfrey v. Union Electric Co.*, 874 S.W.2d 504 (Mo.App.1994), were negligence actions brought by passengers in motor vehicles that struck utility poles. In each case the pole that was struck was outside the paved portion of the road. For that reason both cases held that the utility did not owe the injured party any duty of protection from the type of injury claimed. *See Dokmo*, 965 S.W.2d at 954; and *Godfrey*, 874 S.W.2d at 505.

---

**3.** *Clinkenbeard* explains, "At the conclusion of the evidence upon a trial of the action, the trial court gave a peremptory instruction, in the nature of a demurrer to the evidence, directing the jury to return a verdict in favor of both defendants [the utility company and the city]; . . . ." 10 S.W.2d at 54–55.

*Rothwell v. West Central Electric Co-op., Inc.,* 845 S.W.2d 42 (Mo.App.1992), was a wrongful death action that sought recovery from a utility company based on "negligent placement, inspection and maintenance of a wooden utility pole." *Id.* The pole in question "was some nine feet from the road." *Id.* The decedent was driving his automobile when he veered off the road and struck the pole. He left his vehicle following the collision with the pole and walked into the roadway where he touched a downed electrical line, electrocuting him. *Rothwell* declared that *Clinkenbeard* controlled; that it "expressly holds that there is no duty owed to an operator of a motor vehicle that has left the traveled portion of the road." *Id.* at 43.

The critical facts in this case are that the utility pole that was struck was off the traveled portion of the roadway, and the injuries that were sustained and that are the bases of the Bakers' claims were the consequence of the automobile with which the Bakers' vehicle collided striking the utility pole. The location of the utility pole was established by:

a. The affidavit of Richard Crow, an employee of Empire, that was submitted in support of Empire's motions for summary judgment. It states that the utility pole was set in the ground in a hole that was a minimum of seven feet from the nearest edge of the paved and traveled portion of the roadway.

b. Photographs of the intersection admitted in evidence in support of the motions for summary judgment to demonstrate that the utility pole was off the paved and traveled portion of the roadway.

c. The Bakers' response to Empire's motions for summary judgment that asserted, "Empire knew the deadend [sic] pole was approximately seven feet closer to the pavement than the poles to the south."[4]

d. Deposition testimony of an expert witness whose services were engaged by the Bakers, Judson Matthias. He testified that the pavement was four feet from the utility pole, but that "people are cutting the corner" so the pole is actually two feet from the "traveled portion of the roadway."

e. Deposition of another expert witness retained by the Bakers, John E. Baerwald. Mr. Baerwald testified that the vehicles were not located on the traveled way when the pole was hit. His testimony included the following questions by Empire's attorney and the following answers:

Q. Were the vehicles located on the traveled way when they hit the pole?

A. No, they weren't. But this is a unique area, in that immediately adjacent to the roadway here is a parking area. So it's differentiated in that a parking area is an area available to vehicle usage. And so, consequently, it's different than this general statement which would imply that it's an area not normally used by vehicles.

Q. Well, is a parking area the traveled – that considered part of the traveled way, a parking area?

A. No. But it's – it's different than an area that's not utilized normally by vehicles. A parking area normally is utilized by vehicles. . . .

. . .

Q. Are you saying that – is this pole in a parking lot? Or is it in the roadway?

A. It's on the public right-of-way, but it's immediately adjacent to the parking lot.

Q. It's adjacent to it. Is it in the parking lot?

A. No. It's in the public right-of-way. And it's my understanding that sometimes when they have crowded conditions in the cemetery, some people may

**4.** The "dead end pole" is the utility pole that was struck.

be parking in very close – well, right next to the pole.

Mr. and Mrs. Baker argue that the facts of their cases distinguish them from the holding in *Clinkenbeard*. The Bakers argue that their cases are analogous to *State ex rel. City of Springfield v. Cox,* 327 Mo. 152, 36 S.W.2d 102 (banc 1931)[5]; *Calderone v. St. Joseph Light & Power Co.,* 557 S.W.2d 658 (Mo.App.1977); *Eilers v. Union Electric Co.,* 386 S.W.2d 427 (Mo.App. 1964); and *Thornton v. Union Electric Light & Power Co.,* 230 Mo.App. 637, 72 S.W.2d 161 (1934), in which it was held that the "no duty" principle established by *Clinkenbeard* did not apply.

*Cox* involved a collision with a utility pole located within a paved sidewalk area that connected a paved road with a parking lot. "In passing from Main avenue into the area of ground owned by the railroad and in coming back from that area to the street, persons in automobiles drove on both sides of this light pole." 36 S.W.2d at 103. The paved road, sidewalk, and adjoining parking lot from which the car that collided with the pole was exiting, were level and connected. The three areas were not separated by a curb or other barricade.

A passenger in the car that struck the utility pole sued the utility that owned the pole and the railroad that owned the property adjacent to the street and sidewalk. The court concluded:

> The evidence most favorable to plaintiff shows this pole standing in a public driveway at a place where automobiles passed on both sides of it, and, if defendants be permitted to maintain it at that place, they should provide some means to render this pole visible to travelers at all angles in all kinds of weather both day and night, and, if that were not done, then the public should, in some way, have been prevented from passing this pole on the south side.

*Id.* at 104. *Cox* held, "It is clear ... that the location and maintenance of this pole by defendants at the place where it was located with no provision to make the pole visible from the west on a dark rainy night was sufficient to make the question of their negligence one for the jury." *Id.*

The pole that is the subject of the Bakers' claims was not in a traveled area where automobiles were expected to pass and did pass on both sides of it. Their reliance on *Cox* is misplaced.

*Calderone,* likewise, is of no assistance to the Bakers' claims. The plaintiff in *Calderone* was an ambulance attendant who came in contact with a fallen power line at the scene of an accident where he had gone to render assistance. The power company had been notified of the downed line prior to the injury to Mr. Calderone, but had not discontinued current to the downed wire. The court held that the utility company was liable due to its failure to timely discontinue current to the live wire Mr. Calderone touched. *Calderone* explains, "Indeed, the evidence for plaintiff by Swearinger, load dispatcher for the [power company], that he had it within his power by the manipulation of selector buttons to discontinue the deadly current to the live wire suspended over the highway within fifteen seconds after notice but—for reasons of his own—failed to do so, proves a jury issue on the negligent causation of a foreseeable injury." 557 S.W.2d at 663. *Calderone,* involved a utility's duty to timely discontinue current to a downed power line rather than a claim that a utility company had a duty to protect a passenger from injury because a vehicle left the traveled portion of a road and struck a pole that was off the roadway.

Mr. and Mrs. Bakers' reliance on *Eilers* is also misplaced. In *Eilers* the driver of an automobile decided to pull off the road to adjust his car's sunshade and put on his

---

5. This case was heard by the Supreme Court of Missouri on certiorari. *Cunningham v. City of Springfield,* 226 Mo.App. 23, 31 S.W.2d 123 (1930), is the court of appeals opinion from which certiorari was granted.

sunglasses. He slowed and turned onto the shoulder of the roadway where he struck a piece of utility pole that was lying on the shoulder of the road. The driver lost control of the car. The car continued beyond the object that had been struck and collided with a standing utility pole. The piece of pole that had been lying on the shoulder of the roadway and which Mr. Eilers first struck had markers that revealed it belonged to the defendant utility company.

Mr. Eilers obtained a favorable verdict at trial, but the trial court granted the utility company's motion for new trial. On appeal the court found that Mr. Eilers had made a submissible case based upon the utility company's negligence in placing the section of pole on the ground where it was struck by Mr. Eilers; that the trial court erred in granting the utility company's motion for new trial. The court observed that it had previously held "that the placing of an obstruction in a place which people were 'licensed' to use was negligence." 386 S.W.2d at 431.

*Eilers* found negligence as a result of a utility company having left a section of pole lying on the shoulder of the highway. Liability was not based on a car striking an upright pole off the traveled portion of a road. *Eilers* is of no help to Mr. and Mrs. Baker.

The remaining case on which Mr. and Mrs. Baker rely is *Thornton*. *Thornton* involved an accident in which a truck struck an anchor pole off the traveled portion of the highway. The anchor pole was broken in two pieces. The severed part of the anchor pole did not immediately fall, but lodged against the truck that struck it. The anchor pole was on the east side of the road. A guy wire ran from the anchor pole across the highway to a pole west of the road. No power lines were attached to the anchor pole. Power lines were attached to the pole west of the road.

The plaintiff in *Thornton*, like the plaintiff in *Calderone*, was not involved in the accident in which the anchor pole was struck, but was a third party who stopped to render assistance. Mr. Thornton arrived within ten minutes after the accident. While Mr. Thornton was helping the persons who had been in the truck at the time of the accident retrieve items that had been dislodged from the truck, the severed part of the anchor pole slipped and fell to the ground. As the anchor pole fell, it pulled the guy wire across an energized line on the power pole west of the road. The electrified guy wire struck Mr. Thornton. He fell to the ground unconscious and sustained serious injuries.

The court held that Mr. Thornton had made a submissible case of negligence against the utility company that owned the anchor pole and the transmission pole it supported. The court observed:

> [T]he [utility company's] guy wire was strung over and across the highway, so that if it should fall by reason of the breaking of the anchor pole or becoming detached therefrom, it would necessarily fall across the highway and at the same time come in contact with the high-tension wires on the transmission line and become charged with the deadly voltage carried by these wires, and thus endanger the lives of persons rightfully upon the highway.

72 S.W.2d at 164.

*Thornton* explained the rationale for its holding:

> The gist of the negligence charged was the maintenance by [the utility company] of its uninsulated guy wire over and across the highway fastened on the east side to an anchor pole, which the defendant knew, or in the exercise of the highest degree of care ought to have known, was likely to be broken down by the collision of an automobile therewith, thereby causing the guy wire to become charged with electricity by contact with the uninsulated transmission wires, and, being so charged, to fall upon the high-

way, and thus endanger the lives of persons using the highway.

*Id.* at 165.

The facts in *Thornton* are unique. They differ significantly from the facts in the cases that are the subject of this consolidated appeal. The issue in *Thornton* was the safety of the support system for the pole to which the downed power line was attached. The cases that produced these appeals do not involve questions related to the design of the support system for the pole that carried the power line that injured the Bakers.

*Thornton* involved an injury to a person who was not involved in the accident that produced the broken pole. Mr. and Mrs. Baker were in one of the vehicles involved in the collision that resulted in the pole being struck and the dislocation of the power line that produced their injuries.

The Bakers sustained injuries as a result of a vehicle with which their car had collided striking a utility pole that was located off the road. The pole broke and a power line the pole supported fell onto the Baker car that had come to rest at the location where the pole previously stood. *Clinkenbeard v. City of St. Joseph, supra,* and *Godfrey v. Union Electric Co., supra,* are controlling precedents. *Clinkenbeard* held no duty is owed to the operator of a motor vehicle who leaves the road and strikes a power pole maintained outside the road. *Godfrey* involved a case in which a passenger in a car that struck a pole under those circumstances could not recover from the utility company that maintained the pole because the utility company owed no duty of protection.

This court perceives no difference in the circumstances of a passenger in a vehicle that left the road and struck a utility pole located off the road and the circumstances of Mr. and Mrs. Baker. Although the Bakers' vehicle did not strike the pole from which the power line that inflicted injury to them fell, the pole had been struck by the other vehicle with which their vehicle collided. The Bakers' vehicle ended up at the location where the broken pole had stood. Under these circumstances, consistent with *Clinkenbeard* and *Godfrey,* this court holds that Empire owed no duty to protect the Bakers from the injuries they sustained. Point I is denied.

Point IV, as this court perceives it, further attempts to challenge the principle established in *Clinkenbeard* and *Godfrey* that a utility company that has a power pole outside a road owes no duty to protect motor vehicle travelers from injuries occasioned by a vehicle leaving a road and striking the utility company's power pole. The language of Point IV, as best this court can determine, asserts that this court should not heed the holding in *Clinkenbeard* because it is inconsistent with various electrical industry safety codes. This court declines the invitation to ignore *Clinkenbeard.* As *Godfrey* notes, "We are constitutionally bound to follow the last controlling decision of the Supreme Court of Missouri. Mo. Const. art. V, Sec. 2 (1945)." 874 S.W.2d at 505. Point IV is denied.

■■■ One of the counts in each of the Bakers' petitions, Count V, is identified as a nuisance claim. Point II is directed to the trial court's finding that "[a]ll of the claims of [the Bakers] are negligence claims." Point II asserts the trial court erred in characterizing what the Bakers identified as nuisance claims as "negligence claims." Mr. and Mrs. Baker argue that negligence is not required to support their nuisance claims; that the trial court's finding that all claims were negligence claims is erroneous.

Count V in each petition is entitled "Nuisance." Nevertheless, the allegations in each Count V are replete with language attributable to claims of negligence. Each petition asserts, "Empire knew or should have known, in the exercise of the requisite degree of care...." There are allegations included in each Count V by incorporation by reference. One of those

allegations is directed to foreseeability. It asserts that Empire should have reasonably foreseen "that the risk of uninsulated downed live conductors at this location was unnecessary and unreasonable and that injuries such as those that occurred, were not improbable, unusual, extraordinary, or exceptional." Each Count V also alleges that the "injuries and damages [for which recovery was sought] were directly and proximately caused by a public nuisance maintained by [Empire]."

"The form of the action will be determined from allegations of the petition and from the real nature and substance of the facts alleged in said petition and not from what the pleader may have called it." *Aetna Cas. & Sur. Co. v. Lindell Trust Co.*, 348 S.W.2d 558, 563 (Mo.App.1961). A party seeking relief may recover only on the basis of the theory of recovery pleaded. *Main Street Feeds, Inc. v. Hall*, 975 S.W.2d 227, 233 (Mo.App.1998); *Conduff v. Stone*, 968 S.W.2d 200, 205 (Mo.App.1998); *Sisk v. McIlroy and Associates*, 934 S.W.2d 567, 571 (Mo.App.1996); *Kiener v. Powell*, 865 S.W.2d 864, 867 (Mo.App. 1993); *Turnbough v. Farmers Ins. Co.*, 720 S.W.2d 752, 754 (Mo.App.1986). The trial court may have concluded from the language pleaded that the real nature and substance of what was alleged in each Count V was an action for negligence. Or, the trial court's finding that all claims were negligence claims could have been a recognition that the nuisance claimed by the Bakers was founded in negligence; that, therefore, the rationale of *Clinkenbeard* applied.

"A 'public nuisance is an unreasonable interference with a right common to the general public.'" *State ex rel. Dresser Industries, Inc. v. Ruddy*, 592 S.W.2d 789, 792 (Mo.1980), *quoting* Restatement (Second) of Torts § 821B(1) at 87 (1977). Negligence and nuisance, insofar as liability to third parties for injuries caused by unreasonably dangerous conditions of property, are often treated by courts as coexisting and practically inseparable. *Jackson v.*

*City of Blue Springs*, 904 S.W.2d 322, 328 (Mo.App.1995).

A claim for nuisance founded on negligence requires a duty and breach of duty as does a claim for the underlying negligence. *Clinkenbeard* and its progeny declare that a utility company owning a pole that is located off a road has no duty to protect vehicle travelers from injuries caused by a vehicle running off the road and striking the utility company's pole. The rationale of *Clinkenbeard* is equally apropos to a nuisance claim founded on negligence as it is to the underlying negligence claim. Even if the trial court's language characterizing all claims as "negligence claims" was overbroad, no prejudice resulted. Point II is denied.

As this court understands Point III (which includes two sub-points), Mr. and Mrs. Baker contend the trial court erred in granting summary judgments because there existed genuine issues concerning material fact. *See* Rule 74.04(c)(3). The issues to which Point III is directed are "whether [the Bakers'] vehicle was involved in pole impact or came to a position of rest tantamount to pole impact" and whether the location of the pole in question was on a traveled portion of the road.

There was no issue concerning what happened with respect to "pole impact." The pleadings and other evidence before the trial court disclosed, without question, as the trial court found, "[T]he Baker vehicle collided with another vehicle. The other vehicle struck the pole causing it to fall and the Baker vehicle came to rest in the approximate location where the pole had been located. The pole was located some four to seven feet from the paved portion of the intersection."

The principle established in *Clinkenbeard* applies to impact with a pole. It also applies to injuries from fallen lines. *Rothwell v. West Central Electric Co-op, Inc.*, *supra*. It applies to claims based on maintenance of poles. *Godfrey v. Union*

*Electric Co., supra; Noe v. Pipe Works, supra*; *Rothwell, supra.*

The discovery material, supporting affidavit of Empire's lineman, and other evidence before the trial court for purposes of its ruling on the motions for summary judgment that were granted, support its finding that "[t]he pole was located some four to seven feet from the paved portion of the intersection." The Bakers' expert's deposition testimony was that the pavement was four feet from the utility pole and two feet from where vehicles "cut[ ] the corner." There was no genuine issue as to the material facts to which Point III is directed. Point III is denied.

■ The remaining point, Point V (with three sub-points), asserts the trial court erred in granting summary judgment in that its actions violated three provisions of the Missouri Constitution and the 14th Amendment to the United States Constitution. Its first complaint is that the trial court violated Mo. Const. art. I, § 14, that provides "[t]hat the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property, or character, and that right and justice shall be administered without sale, denial or delay."

■ Mo. Const. art. I, § 14, permits the pursuit in the courts of causes of action recognized in substantive law. *Fisher v. State Highway Com'n of Mo.*, 948 S.W.2d 607, 611 (Mo. banc 1997). It applies to legislative or judicial acts that impose procedural bars to access to the courts of Missouri. *Wheeler v. Briggs*, 941 S.W.2d 512, 514 (Mo. banc 1997). The principle established by *Clinkenbeard*, about which the Bakers complain, is a substantive determination. It imposes no procedural bar to access to Missouri courts.

■ Point V asserts the trial court violated Mo. Const. art. II, § 1; that the trial court erred in that it usurped the function of the legislature by denying the Bakers the benefits or legislatively enacted safety policies applicable to electric utility companies. *Clinkenbeard* established a rule of substantive law with respect to negligence, a tort established by common law. Common law is subject to change by the legislature or judicial decision. *Adams v. Children's Mercy Hosp.*, 832 S.W.2d 898, 906 (Mo.banc), *cert. denied*, 506 U.S. 991, 113 S.Ct. 511, 121 L.Ed.2d 446 (1992). That has not occurred.

Point V's third complaint is that the application of the *Clinkenbeard* holding to the facts of the cases that make up this consolidated appeal denies the Bakers equal protection of laws in that their use of the shoulder of a road does not afford them remedies for negligence that are available to those not using that part of a roadway. The 14th Amendment to the United States Constitution and Mo. Const. art. I, § 2, bestow on citizens, *inter alia*, "equal rights and opportunity under the law."

■ An equal protection claim involves a two-step analysis. First, a determination is made as to whether a "suspect class" is burdened or if a "fundamental right" is impinged. *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 829 (Mo. banc 1991). If there is no suspect class or no burdening of a fundamental right, there must be a determination of whether the complaint being made rationally relates to a state interest.

The Bakers concede that there is no "suspect class" involved in their cases. They contend a fundamental right is involved—the denial of their access to the courts. This court has determined the application of the holding of *Clinkenbeard* does not violate their access to the courts. Without addressing whether access to courts is a fundamental right for purposes

of equal protection of law, that holding suffices.[6] It does not violate the Bakers' right to equal protection under law. Point V is denied. The judgments are affirmed.

CROW, P.J., and SHRUM, J., concur.

6. " 'Fundamental rights' include such things as freedom of speech, freedom of the press, freedom of religion, the right to vote and the right to procreate." *Blaske, supra,* at 829.