Frances TURNBOUGH,
Plaintiff-Appellant,

v.

FARMERS INSURANCE COMPANY,
Defendant-Respondent.

No. 50086.

Missouri Court of Appeals,
Eastern District.

Nov. 12, 1986.

Motion for Rehearing and/or Transfer
Denied Dec. 16, 1986.

Nancy Clare Sleater, Clayton, for plaintiff-appellant.

Paul J. Passanante, St. Louis, for defendant-respondent.

KELLY, Judge.

This is an action on an automobile insurance policy to recover for a loss resulting from a claimed theft of a car. Appellant, Frances Turnbough, appeals from a judgment in favor of respondent, Farmers Insurance Company, in a jury-waived trial. The judgment of the trial court is affirmed.

In May of 1975, appellant was twenty-one years old, and living with her mother Carol Datolli and James Datolli, her stepfather. Carol Datolli had married James Datolli in 1969, divorced him in 1973 and remarried him in 1979. James Datolli, however, lived with Carol Datolli at all times since 1969.

In May of 1975, appellant wanted to purchase a new car, a 1975 Pontiac Formula 350 Firebird, at Vincel Pontiac in St. Louis. Appellant needed a co-signer in order to finance the car. Appellant asked her stepfather's parents, John and Madeline Datolli, to co-sign for a car loan. John and Madeline Datolli met appellant at the car dealership and agreed to help her purchase the car. The total purchase price was $5,507.00. Appellant traded in her used car, a 1973 Gremlin, and received a credit of $1,507.00 towards the purchase of the new car. John Datolli paid the balance of approximately $4,000.00 in cash.

Appellant hesitated when the salesman asked her to sign the title application, because she was not sure whether her "grandparents" wanted their name on the title. Appellant testified that her "grandfather" instructed her to sign her name on the title, but that she would have put the car in her "grandparent's" names if they had requested her to do so. Appellant told her "grandparents," and they agreed, that appellant would pay back their $4,000.00 by making monthly payments of $140.00. Appellant also testified that she would have signed a promissory note agreeing to pay back her "grandparents" at a rate of $140.00 per month if they had requested it, as appellant considered the $4,000.00 payment to be a loan to purchase the car.

Appellant made her loan payments of $70.00 twice a month to her "grandparents" for the months of June, July, August and September of 1975. Appellant did not make a $70.00 loan payment due her "grandparents" on October 1, 1975.

Appellant purchased an insurance policy from respondent Farmers Insurance Company, Inc., insuring her new car. The insurance policy was in effect on October 1, 1975.

On October 4, 1975, appellant drove her Firebird to a tavern in Illinois. When appellant came out of the tavern at approximately 9:30 p.m., the Firebird was not in

the parking lot. Appellant telephoned the Monroe County, Illinois Police Department. When the deputy sheriff arrived at the tavern, appellant told him that the car had been stolen. The deputy completed a motor vehicle theft report.

On October 5, 1975, appellant learned from her cousin, Norma Whitney, that the Firebird was at the home of Frank and Imogene Datolli, the brother and sister-in-law of appellant's "grandfather," John Datolli. Appellant drove by the home of Frank Datolli and saw that the Firebird was blocked in by other cars in the driveway. When appellant approached her car, an unidentified man came out of the house. When appellant told him she wanted the Firebird, an argument ensued. Appellant never contacted Frank or Imogene Datolli about the Firebird at that time or at any time thereafter.

After leaving Frank Datolli's home on October 5, 1975, appellant went to the Maplewood Police Department. Appellant told Sgt. Sorbello that her car was stolen and was at the home of Frank Datolli. Sgt. Sorbello did not make a motor vehicle report, but did, however, send a patrol car to the home of Frank Datolli. The patrol officer informed Sgt. Sorbello that a Firebird was not at that location.

Appellant never contacted her "grandparents" to discuss the Firebird or to ask for its return. Appellant's mother, Carol Datolli, similarly never asked her husband or any of the family members if there was a way to try and resolve the problem, and she never discussed the matter with her daughter, the appellant.

On October 6, two days after the Firebird was taken from appellant's possession, appellant made a claim to respondent Farmers Insurance Company, Inc., declaring that the insured Firebird was stolen. Farmer's Insurance Company, never made a settlement offer to appellant.

Appellant's "grandfather," John Datolli, died in 1978. In July 1978, appellant was given possession of the Firebird in exchange for dropping an unrelated civil suit against her "grandparents". The car was returned to appellant with relatively minor damage and relatively little mileage increase.

In 1978, appellant filed suit against respondent, alleging that the Firebird was "stolen" on October 4, 1975, which constituted a loss within the meaning of her insurance policy. In a jury-waived trial, the trial court found "that a repossession in fact (if not in law) occurred.... Plaintiff made no effort to settle the dispute with her 'family' but instead looks to her insurance carrier for relief." Additionally, the trial court found that there was no evidence of criminal taking of the Firebird. Thus, the court found that there was no "theft" of the Firebird within the provisions of the insurance policy and rendered judgment in favor of respondent.

In appellant's first point on appeal, appellant contends that the trial court erred in entering judgment in favor of respondent, Farmers Insurance Company, because appellant should have recovered under the "comprehensive" coverage of her insurance policy.

Neither in her pleadings nor in any other part of the record did appellant request relief from the trial court on this theory. The trial court stated in its Findings of Fact and Conclusions of Law that, "The question presented to the Court on the issue of defendant Farmers Insurance Company's liability to plaintiff is a narrow one: was the car 'stolen' as that term is meant within the provisions of an automobile insurance policy?"

An appellate court will review a case only upon the theory tried. *Pumphrey v. City of Lutesville*, 707 S.W.2d 475, 477[3] (Mo.App.1986). Appellant is not entitled to relief on the basis of what she claims she could, but did not, plead as a theory of recovery. *Zobel v. General Motors Corp.*, 702 S.W.2d 105, 106[2] (Mo. App.1985). Inasmuch as the theory appellant relies on now was never presented to and decided by the trial court, we cannot consider it here.

In reviewing this court-tried case we are guided by the principles of *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976) and the judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. We must exercise the power to set aside the trial court judgment on the ground that "it is against the weight of the evidence" with caution and with a firm belief that the judgment is wrong.

Appellant next contends that she should recover for the loss of use of the Firebird under the Supplementary Payments Provision in the insurance policy. The pertinent part of the Supplementary Payments Provision reads as follows:

"Supplementary Payments (a) If a theft of the entire described automobile is covered under this policy, the company will reimburse the named insured for transportation expense, not exceeding Ten Dollars for any one day, incurred during the period starting forty-eight hours after the theft has been reported to the company and the police and ending when the company offers settlement for the theft."

Appellant contends that the Firebird was the subject of a "theft," and thus she should recover under the policy. We disagree.

The sole issue presented at trial was whether appellant's Firebird was "stolen" so as to constitute a "theft" as that term is used within the provisions of the automobile insurance policy, wherein the term "theft" was not defined.

Missouri case law has construed the term theft as employed in an insurance policy. In *Eiswirth Const. & Equipment Co. v. Glenn Falls Ins. Co.*, 240 S.W.2d 973, 979[8] (Mo.App.1951) this court held that in order to show "theft" there must be criminal intent to deprive the owner of his property permanently. The modern trend today, where the word "theft" is not defined in the insurance policy, is to give it a liberal construction, namely a common and ordinary meaning according to the understanding of persons in ordinary walks of life. The term "theft" has been construed to include any wrongful deprivation of the property of another without claim or color of right. *Ranger Ins. Co. v. Ailshire*, 551 S.W.2d 896, 899[1] (Mo.App.1977).

To constitute "theft" of an automobile within a theft policy, the taking must be without the owner's consent with the intention on the part of the taker to convert the automobile and deprive the owner of his property.

*id.*, l.c. 979[9].

■ However, we do not believe that the modern trend has eliminated the crucial element of "theft" that the taking must be accompanied by a criminal intent to deprive the owner of the property permanently.

In this case the trial court found that there was no evidence of criminal intent on the part of the taker to convert the car to his own use.

The record reflects, as the trial court found, that this case had its genesis in a family dispute occasioned by the failure of appellant to make the monthly payments as she had promised her "grandfather" she would. Although she knew where her car was initially, appellant made no effort to resume her payments nor to contact her "grandfather" and ascertain why her car was seized, and what she could do to regain possession of the Firebird.

■ We conclude that the trial court did not err in its findings.

Appellant's last point is that the trial court erred in failing to assess damages against respondent for vexatious refusal to pay appellant's insurance claim.

■ Under § 375.420 RSMo 1978, to recover for vexatious refusal to pay, one must show that insurer's refusal to pay a loss was willful and without reasonable cause, as the facts would appear to a reasonably prudent person. *DeWitt v. American Family Mutual Insurance Company*, 667 S.W.2d 700, 710[30] (Mo. banc 1984). Since the repossession of the Firebird did

not constitute "theft," respondent's refusal to pay the claim was not willful and without reasonable cause. There was no evidence presented at trial showing any lack of good faith on Farmers' part in denying appellant's claim. The insurer reasonably refused to pay appellant's claim, because there was a substantial question of fact whether appellant's car was "stolen" as that term is used within the insurance policy.

■ Appellant's argument for damages for insurer's vexatious refusal to pay is without merit, and thus, insurer is not subject to the penalties of § 375.420 RSMo 1978.

Respondent's Motions to Strike and to Dismiss, having been taken with the case, are denied.

Judgment affirmed.

SATZ, P.J., and CRIST, J., concur.