CENTRAL DISTRICT ALARM,
INC., a Missouri Corporation,
Plaintiff/Appellant,

v.

HAL–TUC, INC., a Missouri Corporation,
Defendant/Respondent.

No. 64742.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 1, 1994.

Michael E. Whittle, St. Louis, for appellant.

David R. Spitznagel, Kirkwood, for respondent.

CRANE, Presiding Judge.

Plaintiff, Central District Alarm, Inc., appeals from judgments in a court-tried case in favor of defendant, Hal–Tuc, Inc., on plaintiff's claim for breach of contract in the sale of a security system and on defendant's counterclaim for fraud. We affirm the judgment on the petition for breach of contract and reverse the judgment on the counterclaim for fraud.

In this court-tried case, we defer to the trial court's implicit determinations of credibility, view the evidence and permissible inferences in the light most favorable to the judgment, and disregard all contrary evidence and inferences. *Johnston v. Bates,* 778 S.W.2d 357, 363 (Mo.App.1989). Central District Alarm, Inc. (CDA) is a Missouri corporation engaged in the business of selling security systems. Hal–Tuc, Inc. is a Missouri corporation which operates retail lingerie and novelty stores. Prior to January, 1991 John Haltom, President of Hal–Tuc, contacted Ron Weber, a security consultant for CDA, about purchasing a video surveillance system for one of its stores. Weber recommended a Javelin system and designed a system for Hal–Tuc.

On January 3, 1991 CDA and Hal–Tuc entered into a written sales agreement which provided that CDA would sell and install security equipment as described on an equipment list attached to the contract. This list included a Javelin VCR. The equipment was supposed to be new. The contract price was $7,692.00 of which $2,533.00 was paid when the contract was executed, with the balance to become due after CDA installed the equipment.

CDA ordered a new Javelin VCR but its supplier sent a new JVC VCR. CDA's supplier told CDA it would take another month to get a Javelin. When the system was installed on January 28, 1991, CDA installed a used JVC VCR instead of a new Javelin VCR. CDA did not install the new JVC VCR sent by its supplier because it would not be able to return the VCR after it had replaced it with the Javelin.

Haltom called Ron Weber the day after the installation and complained that the equipment was not Javelin and that the VCR was a used JVC VCR. Weber told Haltom that the equipment was not used and that a JVC VCR was better than a Javelin. Haltom telephoned CDA personnel over a two-week period during which they denied that the equipment was used. After two weeks CDA's installation manager, Brian Modglin, went to the store to see the equipment. After Haltom showed him the scratches, Modglin admitted for the first time that the VCR was used. No one from CDA advised Haltom in advance that CDA was installing used equipment temporarily. After CDA admitted it had supplied a used JVC VCR, it offered to replace it with a new Javelin VCR as soon as one arrived, which would take one or two months. Haltom asked CDA to return Hal–Tuc's $2,533.00 deposit in exchange for CDA taking its equipment back. CDA refused to return the deposit. Hal–Tuc put all the equipment in boxes and stored it.

CDA filed a petition against Hal–Tuc for damages for breach of contract. Hal–Tuc filed a counterclaim alleging fraud. After a bench trial, the trial court entered judgment in favor of Hal–Tuc on CDA's petition and in favor of Hal–Tuc on its counterclaim in the amount of $2,533.00. The parties did not request written findings of fact or conclu-

sions of law and none were entered. CDA appeals.

In a court-tried case we must sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously applies or declares the law. Rule 73.01(c); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■ For its first point, CDA asserts that the trial court erred in entering judgment in favor of Hal–Tuc because CDA had the right to cure by tendering conforming goods after Hal–Tuc rejected the nonconforming goods. Both parties treat this contract, which in-cludes both a sale and installation of goods, as governed by Article 2 of the Uniform Commercial Code. § 400.2–101 *et seq.,* RSMo (1986). We agree.

■ In a contract which calls for both goods to be furnished and services to be performed, the test for whether the UCC applies is whether the predominant purpose of the contract is to render services with goods incidentally involved, or to transact a sale, with labor incidentally involved. *Cork Plumbing Co. v. Martin Bloom Assoc.,* 573 S.W.2d 947, 958 (Mo.App.1978). CDA supplied and installed security equipment pursuant to a "Sales Agreement". The contract did not include ongoing maintenance or services other than installation. Under the predominant purpose test, this was a sale of goods as set out in § 400.2–102 RSMo (1986).

■ In this case there is no dispute that CDA supplied a VCR that did not conform. CDA argues it has a right to cure under § 400.2–508(2) RSMo 1986 which provides:

(2) Where the buyer rejects a nonconforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender.

Under § 400.2–508(2) the seller must "seasonably" notify the buyer of the intention to cure. "Seasonably" means "within a reasonable time." § 400.1–204(3) RSMo (1986). A "reasonable time" depends on the nature,

purpose and circumstances of such action. § 400.1–204(2) RSMo (1986). There was evidence from which the trial court could conclude that CDA did not seasonably notify Hal–Tuc of an intent to cure. CDA did not advise Hal–Tuc in advance that it did not have the new equipment and was installing used equipment. CDA installed the used equipment knowingly and not by mistake. Hal–Tuc notified CDA after it discovered that CDA had installed the wrong equipment. CDA first denied that the equipment it installed was used. Only after inspecting the equipment two weeks later did CDA admit the equipment was used and offer to cure with new equipment. These circumstances support a finding that CDA did not seasonably notify Hal–Tuc of its intention to cure.

■ Further, in order to establish a right to cure under § 400.2–508(2) RSMo (1986), the seller must have had reasonable grounds to believe the nonconforming tender would be acceptable. "Such reasonable grounds can lie in prior course of dealing, course of performance or usage of trade as well as in the particular circumstances surrounding the making of the contract." § 400.2–508 cmt. 2. CDA did not show any prior course of dealing, course of performance, or usage of trade by which used equipment could be substituted for new equipment. CDA argues that CDA had reasonable grounds to believe the used JVC would be acceptable temporarily until the new Javelin could be obtained because Hal–Tuc wanted the security system installed as soon as possible. Although there was evidence that Hal–Tuc wanted a security system installed as soon as possible, there was no evidence that Hal–Tuc told or otherwise indicated to CDA that time was more essential than new equipment.

Under these circumstances, CDA could not have had reasonable grounds to believe that a used VCR would be acceptable when a new one had been ordered. Further, CDA could not have had reasonable grounds to believe the tender of a used VCR on a temporary basis would be acceptable until a new one could be supplied where that tender was not accompanied by a disclosure that a used VCR was only being supplied on a temporary

basis. Without such a communication, the tender was strictly a tender of a used VCR in lieu of a new VCR.

Because it did not establish seasonable notification and reasonable grounds, CDA did not establish a right to cure under § 400.2–508(2) RSMo (1986). The trial court did not err in entering judgment in Hal–Tuc's favor on CDA's breach of contract claim.

■ For its second point, CDA asserts the trial court erred by entering judgment in favor of Hal–Tuc on its fraud claim because Hal–Tuc failed to establish the requisite elements of fraud by clear and convincing evidence. CDA argues that Hal–Tuc did not prove that CDA did not intend to perform the contract at the time CDA and Hal–Tuc entered into the agreement.

Hal–Tuc sought recovery of its $2,533.00 deposit on a fraud theory. In its counterclaim Hal–Tuc alleged that CDA represented that the equipment would be new, that Hal–Tuc relied on that representation, and that in so relying, it entered into the sales agreement and made the $2,533.00 deposit. It alleged actual damages of $2,533.00.

■ In an action for fraudulent misrepresentation of present intent, the issue is whether there is evidence that, at the time the speaker made the statement, the speaker's intent was something other than what was represented. *Kenley v. J.E. Jones Construction Co.*, 870 S.W.2d 494, 497 (Mo.App. 1994). A representation's falsity is determined as of the time it was made and as of the time it was intended to be and was relied upon. *Emerick v. Mutual Benefit Life Ins. Co.*, 756 S.W.2d 513, 519 (Mo. banc 1988).

"The intention of the promisor not to perform an enforceable or unenforceable agreement cannot be established solely by proof of its nonperformance nor does his failure to perform the agreement throw upon him the burden of showing that his nonperformance was due to reasons which operated after the agreement was entered into."

*Id.* (quoting *Restatement of Torts* § 530 cmt. c (1938)).

Hal–Tuc did not allege that CDA did not intend to supply a new Javelin VCR at the time the parties entered into the sales agreement. Further, Hal–Tuc did not offer any evidence that it was not CDA's intent to supply a new VCR when it entered into the sales agreement and accepted the down payment.

■ Absent evidence that CDA intended not to supply a new VCR when the agreement was made or evidence from which such an intent can be inferred, there was no substantial evidence to support the judgment in Hal–Tuc's favor on the counterclaim.[1] The trial court erred in entering judgment for Hal–Tuc on its counterclaim for fraud.

*Conclusion*

The judgment in favor of Hal–Tuc, Inc. on the petition is affirmed. The judgment in favor of Hal–Tuc, Inc. on the counterclaim is reversed.

CRANDALL and DOWD, JJ., concur.

---

1. On appeal, Hal–Tuc does not argue that there was evidence to support its pleaded theory. Rather, it argues a different theory of fraud: that CDA fraudulently represented that Javelin equipment was top of the line when in fact JVC equipment was superior. Hal–Tuc did not move to amend the pleadings in the trial court and did not argue a different theory to the trial court. In its brief, Hal–Tuc does not argue that the evidence amended the pleadings. Accordingly, we do not review the issue whether judgment could be sustained under an unpleaded theory of fraud. *Turnbough v. Farmers Ins. Co.*, 720 S.W.2d 752, 754–55 (Mo.App.1986).